STATE OF NORTH CAROLINA v. GREGORY PAUL WHITELEY

No. COA04-636

(Filed 16 August 2005)

**Sexual Offenses— crime against nature—constitutionality of statute—cunnilingus—consent—collateral estoppel**

The crime against nature statute, N.C.G.S. § 14-177, is not unconstitutional on its face because it may properly be used to criminalize sexual conduct involving minors, nonconsensual or coercive conduct, public conduct, and prostitution. Although the statute could constitutionally be applied in this case on the basis that an act of cunnilingus was nonconsensual because the victim was physically helpless, it was unconstitutional as applied in that the trial court erroneously refused to instruct the jury that defendant would be guilty of a crime against nature only if the act of cunnilingus was performed without the victim's consent. However, the issue of the victim's consent cannot be relitigated in a new trial, and defendant's conviction of crime against nature is vacated, where defendant was acquitted of second-degree sexual offense based upon the same act of cunnilingus; the trial court had instructed the jury that, in order to find defendant guilty of second-degree sexual offense, it must find beyond a reasonable doubt that the victim was physically helpless; and the jury by its verdict found that the evidence did not show beyond a reasonable doubt that the act of cunnilingus was performed while the victim was physically helpless and, therefore, without her consent.

Appeal by defendant from judgment entered 18 July 2003 by Judge Russell Walker, Jr. in Ashe County Superior Court. Heard in the Court of Appeals 16 February 2005.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Amy C. Kunstling, for the State.*

*David Childers for defendant-appellant.*

HUNTER, Judge.

Gregory Paul Whiteley ("defendant") appeals from a judgment dated 17 July 2003 entered consistent with a jury verdict finding him guilty of a crime against nature. Defendant contends the trial court

erred in denying his motion to dismiss and in submitting the offense of a crime against nature to the jury, on the grounds that the statute creating the offense, N.C. Gen. Stat. § 14-177 (2003), is unconstitutional. Although we do not find section 14-177 unconstitutional on its face, we find the statute unconstitutional as applied to the facts of this case and, therefore, vacate defendant's sentence as to this offense.

The evidence tends to show that on 24 May 2002, defendant attended a party at which Tashah Stevens ("Stevens") was also present. Defendant was twenty-two and Stevens was eighteen years old at that time.

Stevens testified she attended the party with her younger sister ("Kimberly"), her friend Tomie Miller ("Miller"), and others. Conflicting evidence was offered as to whether Stevens ingested alcohol and took a type of drug known as "ladder bars" while traveling to and after reaching the party. Stevens testified she did not knowingly drink alcohol or take drugs at any point during the night. Stevens also stated she believed she left her drink unattended at the party, and that after retrieving the drink, she did not remember the remainder of the evening.

Contradictory evidence as to Stevens' drug and alcohol use, and as to her apparent cognizance, was offered by those who rode to the party with Stevens and by guests at the party. Miller and another occupant of the vehicle testified Stevens drank alcohol and took ladder bars en route to the party. Multiple witnesses testified that drugs and alcohol were present at the party. Defendant stated he took drugs while at the party, including ladder bars, Ecstasy, marijuana, and crack. Guests present at the party testified they observed Stevens drinking alcohol and behaving in an intoxicated manner.

Sometime in the early morning hours of 25 May 2002, Stevens left the party with Kimberly, Kimberly's boyfriend ("Mark"), and defendant, who was Mark's roommate. Stevens testified she had no recollection of leaving the party or any of the events that followed until the next morning. Kimberly stated Stevens was unable to talk and appeared to be unconscious for part of the ride. Defendant testified Stevens appeared to be "stumbling drunk" when they left the party, but was not unconscious. Upon arriving at defendant's apartment where a number of individuals were gathered, Kimberly testified Stevens was carried inside and placed in defendant's bedroom, because she was "passed out." Defendant testified that he and

Stevens walked in together and then went to his bedroom. Matt Stiednam ("Stiednam"), who had also come from the party, testified he observed defendant and Stevens enter defendant's bedroom together upon arrival, and that Stevens was walking by herself.

Defendant explained that as he helped Stevens undress in his room, that she began kissing him, and that he attempted to have sexual intercourse with her. Defendant testified the contact was consensual and that Stevens was an active participant. Defendant also stated he did not give Stevens any drugs. Defendant testified he was physically unable to engage in intercourse, and instead performed cunnilingus upon Stevens and inserted his fingers into her vagina. Defendant stated that following the intimate contact, Stevens asked for a telephone to make a call. After retrieving a phone for her, he left the room. Stiednam testified defendant left the apartment to take another girl home and did not return until the following morning.

Stevens testified that when she awoke on the morning of 25 May 2003, she was naked, alone in defendant's bedroom, and had a sharp pain in her swollen vaginal area. Stevens also reported trouble focusing her vision when she first awoke. Stevens testified she had no memory of how she got to defendant's apartment, of consenting to sexual activity, or of any events that occurred following the party.

Stevens called a friend to pick her up and took a shower after arriving home. She then went to a hair appointment and to a restaurant where a friend, Shannon Miller ("Shannon"), worked. Shannon testified Stevens was upset and told her she had been raped. Shannon convinced Stevens to go to the emergency room. Shannon testified Stevens asked her to tell the nurses, if asked, that Stevens had not been drinking the previous night or that someone had slipped something into her drink.

Stevens was examined by Dr. Elizabeth Bradley ("Dr. Bradley"), who testified at trial that her examination revealed bruises around Stevens's pelvic area and a swollen, red, and bleeding vagina. Dr. Bradley explained a physical examination was not completed due to the abrasions and soreness, but that something had been forcibly inserted into Stevens's vagina, possibly repeatedly. She further stated the vaginal injuries sustained by Stevens could not have been caused by the sexual activity described by defendant, but that the perpetrator's identity could not be determined from the examination.

A toxicology screen was performed on Stevens. The test showed no presence of alcohol, but did reveal the presence of the drug

Benzodiazepine. Benzodiazepine is a prescription drug also known by the street name of ladder bars. Dr. Bradley testified that when ingested, Benzodiazepine can take effect in fifteen to thirty minutes, can result in a person appearing intoxicated, and can cause memory loss, confusion, and loss of consciousness. Dr. Bradley stated Stevens' description of her memory loss was consistent with having ingested ladder bars.

Defendant was charged with first degree rape, first degree sexual offense, and a crime against nature. At trial, defendant moved to dismiss all charges, asserting that Stevens consented to the sexual activity, and contending that the United States Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508 (2003), rendered the North Carolina crime against nature statute unconstitutional. The trial court reduced the first two charges to second degree rape and second degree sexual offense, but due to the conflicting evidence of the consensual nature of the sexual activity, the trial court denied the motion to dismiss the crime against nature charge. The jury subsequently returned verdicts of not guilty on the charges of second degree rape and second degree sexual offense, and guilty as to the charge of a crime against nature. Defendant received a suspended sentence of six to eight months after sixty days in custody, and thirty-six months intensive supervised probation. Defendant appeals.

Defendant contends, in his interrelated assignments of error, that the trial court committed reversible error in both denying defendant's motion to dismiss the charge of crime against nature and in instructing the jury on the offense of a crime against nature. Defendant argues that N.C. Gen. Stat. § 14-177 is unconstitutional in light of the United States Supreme Court's recent decision in *Lawrence v. Texas*. Although we find N.C. Gen. Stat. § 14-177 constitutional on its face, we agree that the statute is unconstitutional as applied in this case in that the trial court erred in its jury instructions.

N.C. Gen. Stat. § 14-177 states: "If any person shall commit the crime against nature, with mankind or beast, he shall be punished as a Class I felon." *Id.* Specific acts which constitute a crime against nature have been defined by case law to include the offense with which defendant was charged in this case, cunnilingus. *See State v. Joyner*, 295 N.C. 55, 66, 243 S.E.2d 367, 374 (1978).

Prior to *Lawrence*, our courts have upheld the constitutionality of section 14-177, finding it neither vague nor overbroad. *See State v. Singleton*, 85 N.C. App. 123, 130, 354 S.E.2d 259, 264 (1987); *see also*

*State v. Adams*, 299 N.C. 699, 264 S.E.2d 46 (1980); *State v. Poe*, 40 N.C. App. 385, 252 S.E.2d 843 (1979). In light of the United States Supreme Court's pronouncements in *Lawrence*, however, we must now reconsider the constitutionality of this law. *See State v. Gray*, 268 N.C. 69, 79, 150 S.E.2d 1, 9 (1966) (holding that our courts are bound by the United States Supreme Court's interpretation of the Federal Constitution). Accordingly, we begin with an examination of the United States Supreme Court's holding.

In *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508, the United States Supreme Court held that a Texas law prohibiting "deviate sexual intercourse" with a member of the same sex violated the due process clause, where the individuals charged were adults engaging in consensual, private sexual activity. *Id.* at 578, 156 L. Ed. 2d at 525. The Supreme Court based its holding on the right to privacy in intimate relationships first recognized in *Griswold v. Connecticut*, 381 U.S. 479, 14 L. Ed. 2d 510 (1965) (invalidating application to married couples of a state law prohibiting the use of contraception and counseling in the use of contraception), and extended to non-marital relationships in *Eisenstadt v. Baird*, 405 U.S. 438, 31 L. Ed. 2d 349 (1972) (invalidating a law prohibiting distribution of contraceptives to unmarried persons as an impairment of personal rights). Although the Texas statute at issue in *Lawrence* prohibited only same-sex sexual conduct, the majority holding explicitly stated that its decision to invalidate the Texas statute was not based on equal protection grounds, but was instead based on the unconstitutional infringement of the liberty interest in private, intimate acts between consenting adults. *Id.* at 574-75, 156 L. Ed. 2d at 523. The Court specifically overruled its prior ruling in *Bowers v. Hardwick*, 478 U.S. 186, 92 L. Ed. 2d 140 (1986), which had upheld the constitutionality of the state of Georgia's sodomy statute prohibiting both heterosexual and homosexual conduct. The Court found that the analysis in Justice Stevens' dissent in *Bowers*, which focused on the "liberty" inherent in individual decisions in the intimacies of physical relationships, should have been controlling in both that case, and in *Lawrence*. *Lawrence*, 538 U.S. at 577-78, 156 L. Ed. 2d at 525.

The Supreme Court, however, did not hold that this Fourteenth Amendment liberty interest in personal relations was without limits. The Court stated that laws which do no more that prohibit a particular sexual act "have more far-reaching consequences, touching upon the most private human conduct, sexual behavior, and in the most private of places, the home[,]" and thus "seek to control a personal rela-

tionship that, whether or not entitled to formal recognition in the law, is within the liberty of persons to choose without being punished as criminals." *Id.* at 567, 156 L. Ed. 2d at 518. Concerns about these far-reaching consequences, therefore, "counsel against attempts by the State, or a court, to define the meaning of the relationship or to set its boundaries absent injury to a person or abuse of an institution the law protects." *Id.* The Supreme Court provided guidance as to those boundaries, however, suggesting four areas where legitimate state interests justified intrusion into the personal and private life of an individual. *Id.* at 578, 156 L. Ed. 2d at 525-26. *Lawrence* stated: "The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution." *Id.* at 578, 156 L. Ed. 2d at 525. The inclusion of this language by the United States Supreme Court clearly indicates that state regulation of sexual conduct involving minors, non-consensual or coercive conduct, public conduct, and prostitution falls outside the boundaries of the liberty interest protecting personal relations and is therefore constitutionally permissible. We conclude that our state's regulation of sexual conduct falling outside the narrow liberty interest recognized in *Lawrence* remains constitutional.

Our courts have already recognized the limits of the narrow liberty interest articulated in *Lawrence v. Texas*, and have upheld laws regulating sexual conduct outside those boundaries. *See State v. Pope*, 168 N.C. App. 592, 594, 608 S.E.2d 114, 116 (2005) (holding the state may properly criminalize solicitation of a crime against nature); *State v. Oakley*, 167 N.C. App. 318, 322, 605 S.E.2d 215, 218 (2004) (holding *Lawrence* does not invalidate charges of criminally prohibited sexual activity with minors); *State v. Clark*, 161 N.C. App. 316, 321, 588 S.E.2d 66, 68-69 (2003), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 81 (2004) (finding *Lawrence* does not control in statutory rape charge due to the express exceptions relating to minors).

We further note that many of our sister courts have likewise interpreted *Lawrence* to apply to the limited liberty interest of personal relations, and have upheld statutes criminalizing acts outside that boundary. *See State v. Thomas*, 891 So.2d 1233, 1238 (La. 2005), (declining to use *Lawrence* to strike down a Louisiana law criminalizing solicitation of a crime against nature); *People v. Williams*, 811 N.E.2d 1197, 1199 (Ill. App. 2004) (noting *Lawrence* specifically excludes prostitution from its holding); *see also Anderson v. Morrow*,

371 F.3d 1027, 1033 (9th Cir. 2004) (holding *Lawrence's* recognition of right of individuals to engage in fully and mutually consensual private sexual conduct does not affect a state's legitimate interest to interpose when consent is in doubt).

Having considered the United States Supreme Court's holding in *Lawrence*, we now turn to defendant's challenge of N.C. Gen. Stat. § 14-177. Defendant contends section 14-177 is unconstitutional on its face as it prohibits specific sexual conduct, and thus attempts to regulate personal relations protected by the Fourteenth Amendment liberty interest. We disagree.

Our Court has a duty to examine a statute and determine its constitutionality when the issue is properly presented, rather than to assume the role of policy maker, which has been entrusted by our Constitution to the legislature. *See State v. Arnold*, 147 N.C. App. 670, 673, 557 S.E.2d 119, 121 (2001). In reviewing the constitutionality of statutes, "[w]e presume that the statutes are constitutional, and resolve all doubts in favor of their constitutionality." *State v. Evans*, 73 N.C. App. 214, 217, 326 S.E.2d 303, 305 (1985). A statute must be held constitutional "unless it is in conflict with some constitutional provision of the State or Federal Constitutions." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388 (1978). Our North Carolina Supreme Court has noted the heavy burden inherent in mounting a facial challenge to the constitutionality of a statute.

> "A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully." . . . An individual challenging the facial constitutionality of a legislative act "must establish that no set of circumstances exists under which the act would be valid." The fact that a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid."

*State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 281-82 (1998) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987)).

As discussed *supra*, *Lawrence* clearly indicates that regulation of particular sexual acts is permissible when legitimate state interests justify intrusion into the personal and private life of the individual, but is not permissible when such regulation intrudes upon personal relations with no legitimate state interest. *See Lawrence*, 539 U.S. at 567, 156 L. Ed. 2d at 518. A legitimate state interest clearly exists in

regulating conduct involving minors, non-consensual or coercive conduct, public conduct, and prostitution. Therefore, as we find that section 14-177 may properly be used to prosecute conduct in which a minor is involved, conduct involving non-consensual or coercive sexual acts, conduct occurring in a public place, or conduct involving prostitution or solicitation, the statute is facially constitutional.

This interpretation is consistent with our Courts prior examination of N.C. Gen. Stat. § 14-177 in light of *Lawrence*. In *State v. Pope*, this Court considered whether *Lawrence v. Texas* rendered the statute unconstitutional when used to prosecute solicitation of a crime against nature. *Pope*, 168 N.C. App. at 594, 608 S.E.2d at 116. *Pope*, noting the limitations of the holding in *Lawrence*, concluded that because acts of prostitution and public conduct were not within the right to private intimate relations recognized by *Lawrence*, the North Carolina statute criminalizing such conduct was not unconstitutional. *Id.* at 594, 608 S.E.2d at 116.

Defendant further contends, however, that N.C. Gen. Stat. § 14-177 is unconstitutional as applied in this case in that the trial court erred in instructing the jury on the offense of crime against nature. After careful review of the facts and law, we agree.

In the wake of the United States Supreme Court's ruling in *Lawrence*, the application of section 14-177, while permissible to prohibit particular sexual acts in which a legitimate state interest in regulation exists, is unconstitutional when used to criminalize acts within private relations protected by the Fourteenth Amendment liberty interest. As noted *supra*, a legitimate state interest exists in prohibiting the conduct proscribed by section 14-177 when such conduct involves minors, public conduct or solicitation. The evidence of record is clear, however, that the act in this case did not involve minors, did not occur in public, and did not involve solicitation.

A legitimate state interest, however, also permits prosecution under section 14-177 in cases involving non-consensual or coercive acts. As the Supreme Court noted in *Lawrence*, historically, laws prohibiting crimes against nature were routinely used to prosecute "predatory acts against those who could not or did not consent[.]" *Lawrence*, 539 U.S. at 569, 156 L. Ed. 2d at 519. Therefore, in order for the application of section 14-177 to be constitutional post-*Lawrence* on the facts of this case, the State must prove beyond a reasonable doubt that defendant committed the sexual act, cunnilingus, and that such an act was non-consensual.

Defendant's request for an instruction that defendant committed a crime against nature without the victim's consent was denied by the trial court. The trial court instead charged the jury that defendant was guilty if he committed the physical act of a crime against nature. The trial court instructed:

> [Defendant] also has been charged with a crime known as crime against nature, which is an unnatural sexual act. For you to find him guilty of this offense, the State must prove beyond a reasonable doubt, that [defendant] committed an unnatural sexual act with Tashah Stevens. One kind of unnatural act is the actual penetration of female sex organ by the tongue of another person.

> If you find from the evidence, beyond a reasonable doubt, that on or about the alleged date, [defendant] committed an unnatural sex act, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt, it would be your duty to return a verdict of not guilty.

"A trial judge is required . . . to instruct the jury on the law arising on the evidence. This includes instruction on the elements of the crime." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). "Failure to instruct upon all substantive or material features of the crime charged is error." *Id.* As the jury was not instructed to consider whether the act was committed without Stevens' consent, the trial court's instruction as to the offense of a crime against nature was in error.

Ordinarily, failure to instruct on each element of a crime is prejudicial error requiring a new trial. *See Bogle*, 324 N.C. at 197, 376 S.E.2d at 748. However, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475 (1970). We, therefore, must determine whether the element of non-consent has been decided and may not be relitigated in a new trial. *See State v. McKenzie*, 292 N.C. 170, 175, 232 S.E.2d 424, 428 (1977) (applying *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469).

The United States Supreme Court, in *Ashe v. Swenson*, addressed the issue of collateral estoppel in criminal matters, holding

> the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a

previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

*Ashe*, 397 U.S. at 444, 25 L. Ed. 2d at 475-76 (footnote omitted). In *Ashe*, the defendant was charged with six counts of armed robbery arising from the same transaction, a robbery of six participants of a poker game. *Id.* at 438, 25 L. Ed. 2d at 472. The defendant was tried and acquitted for the robbery of one victim. *Id.* at 439, 25 L. Ed. 2d at 473. Subsequently, the defendant was again brought to trial for the robbery of another victim. The defendant was found guilty at the second trial, and alleged that the second conviction was barred by the Fifth Amendment protection against double jeopardy. *Id.* at 440, 25 L. Ed. 2d at 473. As the Court noted, the evidence of record was

utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that [the victim] had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The . . . rule of law, therefore, would make a second prosecution for the robbery . . . wholly impermissible.

*Id.* at 445, 25 L. Ed. 2d at 476.

Here, defendant was also charged with second degree sexual offense. In cases where the alleged victim is not mentally handicapped, second degree sexual offense is defined as a sexual act committed either without consent, that is "[b]y force and against the will" of the victim, or when the victim is "physically helpless." N.C. Gen. Stat. § 14-27.5 (2003), *see also State v. Booher*, 305 N.C. 554, 561, 290 S.E.2d 561, 564 (1982). The trial court, in instructing the jury as to the charge of second degree sexual offense, stated that to find defendant guilty, "the State must prove beyond a reasonable doubt" that defendant engaged in a "sexual act" with Stevens. The trial court defined the sexual act that was the basis for second degree sexual offense as cunnilingus, the same conduct that was the basis for the charge of a crime against nature. The trial court further instructed the jury that to find defendant guilty as to second degree sexual offense, they must

IN RE R.P.M.

[172 N.C. App. 782 (2005)]

also find beyond a reasonable doubt that Stevens was physically help-less, and that defendant knew or should have reasonably known that Stevens was physically helpless. The jury acquitted defendant of the charge of second degree sexual offense.

The record is utterly devoid of any indication that the jury could rationally have found that the sexual act which was the basis for both crimes did not occur, as defendant testified at trial to the commission of the sexual act. Further, no evidence was offered at trial that the act was committed by force and against the will of Stevens, as is evi-denced by the trial court's instruction, without objection by the State, only as to physical helplessness and not as to force for the charge of second degree sexual offense. The single rationally conceivable issue in dispute before the jury was whether the sexual act was committed while Stevens was physically helpless, and, therefore, without her consent. The jury, by its verdict, found that the evidence did not show beyond a reasonable doubt that the act was non-consensual, that is, that Stevens was physically helpless and therefore unable to consent to the sexual act. As the issue of non-consent to the sexual act has previously been determined, the State may not "constitutionally hale him before a new jury to litigate that issue again." *Ashe*, 397 U.S. at 446, 25 L. Ed. 2d at 477.

We find that defendant's conviction for a violation of N.C. Gen. Stat. § 14-177, under the facts of this case, was error. We therefore vacate his conviction for a crime against nature.

Vacated.          ·

Judges CALABRIA and JACKSON concur.