STATE OF NORTH CAROLINA v. BRETT CHARLES BROWNING

No. COA05-831

(Filed 16 May 2006)

**1. Rape— statutory—mistake of age—strict liability**

There was no error in a statutory rape prosecution in the denial of defendant's requested jury instruction on reasonable mistake of fact as to the victim's age. Statutory rape is a strict liability crime and defendant's requested instruction was not supported by the law of North Carolina. *Lawrence v. Texas*, 539 U.S. 558, by its own language does not involve minors, and policy arguments about the appropriateness of strict liability are more appropriately addressed to the General Assembly.

**2. Evidence— guidance counselor—truthfulness of statutory rape victim—corroboration—harmless error**

Any error was harmless in a statutory rape prosecution where a guidance counselor testified that she believed the victim's account of the rape. The testimony was admitted for corroboration, in the context of a guidance counselor who was required to report abuse to social services. Any error was harmless because statutory rape is a strict liability crime and defendant admitted that he had sex with the victim.

**3. Evidence— prior crimes or bad acts—deferred prosecution—false statements**

There was no error in a statutory rape prosecution in the admission of defendant's testimony about a prior theft which was the subject of a deferred prosecution. The State limited its inquiry to defendant's false statements to the police, and did not ask him about a conviction which had been expunged or offer extrinsic evidence of his false statements. Moreover, any error was harmless, because defendant admitted having sex with the victim.

Appeal by defendant from judgment entered 26 January 2005 by Judge Edwin G. Wilson, Jr. in Superior Court, Randolph County. Heard in the Court of Appeals 22 March 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse Jr., for defendant-appellant.*

**STATE v. BROWNING**

[177 N.C. App. 487 (2006)]

McGEE, Judge.

Brett Charles Browning (defendant) was convicted of (1) statutory rape in violation of N.C. Gen. Stat. § 14-27.7A(a) and (2) taking indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1. Defendant was acquitted of a charge of crime against nature. The trial court sentenced defendant to a term of 144 months to 182 months in prison. Defendant appeals.

At trial, A.R. testified that she was fourteen years old when she met defendant at his place of employment in the fall of 2002. She testified that when she met defendant, she told him she was fourteen years old. A.R. and defendant began a friendship and regularly "hung out" at defendant's house three to four times a month.

A.R. testified she called defendant on Friday, 5 March 2004, when she was fifteen years old, and that defendant picked her up at her house. A.R. and defendant drove to an ABC store and defendant purchased liquor. A.R. and defendant ate at a McDonald's restaurant and, afterwards, went to defendant's house.

A.R. testified that at defendant's house, she played video games and began to watch a movie with defendant. She drank two shots of liquor and ate pizza with defendant. After a while, A.R. lay down on a couch and fell asleep. When she woke up, defendant was kissing her on her face, neck and arms. A.R. told defendant to take her home, but defendant said he would not take her home "until [it was] over." A.R. testified that defendant then nudged her into a bedroom and engaged in oral and vaginal sex with her.

A.R. testified that on the following Monday, 8 March 2004, she got into an argument at school with three other students and was sent to see the guidance counselor, Linda Thrift (Ms. Thrift). A.R. told Ms. Thrift that she had been raped on the previous Friday by defendant, a man in his thirties.

Ms. Thrift testified she was a guidance counselor and in 2004, had worked at the school A.R. attended. Ms. Thrift testified she met with A.R. on Monday, 8 March 2004. The State introduced into evidence Ms. Thrift's written statement regarding her conversation with A.R. The trial court admitted the statement and advised the jury that the statement was admitted for the purpose of corroboration only. Ms. Thrift read from her written statement that A.R. "told me she was raped the previous Friday night by a man who was in his thirties."

Ms. Thrift further testified that she reported the rape to the Department of Social Services and to the school's resource officer. In response to the State's question regarding what Ms. Thrift told the school resource officer, Ms. Thrift testified as follows:

A. I didn't have to go into much. I—In a case like this, I'm not going to go into details because that's not something I have to know about. All I have to know, have a suspicion that something happened and it was not right. And I—

Q. Okay. Well, let me ask you then, are you law enforcement?

A. No.

Q. Why didn't you ask for more details about what happened?

A. Because I didn't need to know that. The—That's—I don't do the investigation. All I have to have is a suspicion that something happened, and [A.R.'s] behavior and the way [A.R.] was acting and just knowing [A.R.], I believed what [A.R.] was saying.

[DEFENSE COUNSEL]: Object, Your Honor, please. Move to strike.

THE COURT: Overruled.

Defendant testified on his own behalf at trial. Defendant testified that A.R. told him she was sixteen years old when he first met her. Defendant further testified that when he met A.R., she asked him if she could drive his car. Defendant asked A.R. if she had a driver's license and A.R. showed defendant a New York driver's license with her picture on it. Defendant testified that he saw A.R. purchase cigarettes on several occasions. Defendant said he was led to believe that A.R. was a senior in high school in 2004. Defendant admitted that he engaged in oral and vaginal sex with A.R. on 5 March 2004, and that he was forty-two years old at the time.

On cross-examination of defendant, the State engaged in the following inquiry regarding an incident unrelated to the charges for which defendant was on trial:

Q. Yes, sir. . . . You remember Detective Thompson?

A. Yes, sir.

Q. Okay. And Detective Thompson asked you on three separate occasions if you knew anything about the thefts of electronic equipment from [defendant's place of employment]?

A. I don't remember.

Q. And do you—You've never seen him before?

A. I said I'd seen him before, yes, but I don't recollect him asking me on three separate occasions.

Q. Okay. Well, how many times did he ask you if you [knew] anything about the thefts from [defendant's place of employment]?

A. He did ask me about that, yes.

Q. And that was the theft of electronic equipment of the store that you were the manager, is that right?

A. Not electronic equipment, it was a single camera.

Q. Oh, it was just one thing. He just asked you about one thing?

A. Yes, sir.

Q. And you lied to him?

A. Yes, sir.

Q. And then you later admitted to him that you lied to him?.

A. I don't remember ever saying I lied to him. I admitted a full confession.

Q. You admitted stealing the items from [defendant's place of employment]?

A. Yes.

Q. Okay. No further questions. Thank you, sir.

Based upon evidence showing that defendant believed A.R. was over the age of fifteen when he engaged in sexual relations with her, defendant requested a jury instruction regarding the defense of a reasonable mistake of fact as to A.R.'s age. The requested instruction stated as follows:

The [d]efendant contends that he was acting under the reasonable belief that the complaining witness was greater than 15 years of age. If you find from the evidence that the [d]efendant acted under a reasonable belief that the complaining witness in this case was greater than fifteen (15) years of age at the time the [d]efendant and the witness engaged in vaginal intercourse, it would be your duty to find the [d]efendant not guilty. If the facts

STATE v. BROWNING

[177 N.C. App. 487 (2006)]

were as the defendant honestly believed them to be, the defendant's conduct would not be criminal.

The trial court denied defendant's request and did not give defendant's requested instruction.

I.

[1] Defendant first argues the trial court erred by denying his requested jury instruction on reasonable mistake of fact as to A.R.'s age. Defendant relies upon the United States Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508 (2003). Defendant specifically argues in his brief that although *Lawrence* "does not prevent the criminalization of sexual conduct with minors, . . . *Lawrence* supports a mistake of age claim because a defendant's reasonable belief that his partner fell outside the age restriction would entitle him to constitutional protection." Defendant further explains that this "result attends because [a defendant] would not have the requisite *mens rea* or criminal intent necessary to justify punishment."

A trial court must give a jury instruction requested by a defendant, at least in substance, if that instruction is proper and supported by the evidence. *State v. Craig*, 167 N.C. App. 793, 795, 606 S.E.2d 387, 388 (2005). However, " '[t]he proffered instruction must . . . contain a correct legal request and be pertinent to the evidence and the issues of the case.' " *Id.* (quoting *State v. Scales*, 28 N.C. App. 509, 513, 221 S.E.2d 898, 901, *disc. review denied*, 289 N.C. 619, 223 S.E.2d 395 (1976)). A trial court, in its discretion, may refuse to give a legally erroneous instruction. *Craig*, 167 N.C. App. at 795, 606 S.E.2d at 388.

In the present case, defendant's requested instruction was not supported by the law of our State. N.C. Gen. Stat. § 14-27.7A(a) (2005) directs as follows:

A defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person.

Statutory rape, under N.C.G.S. § 14-27.7A is a strict liability crime. *State v. Sines*, 158 N.C. App. 79, 84, 579 S.E.2d 895, 899, *cert. denied*, 357 N.C. 468, 587 S.E.2d 69 (2003). "Criminal *mens rea* is not an ele-

ment of statutory rape." *State v. Ainsworth*, 109 N.C. App. 136, 145, 426 S.E.2d 410, 416 (1993) (citing *State v. Rose*, 312 N.C. 441, 445, 323 S.E.2d 339, 342 (1984)). In *State v. Anthony*, 133 N.C. App. 573, 516 S.E.2d 195 (1999), *aff'd*, 351 N.C. 611, 528 S.E.2d 321 (2000), our Court held that mistake of fact is no defense to statutory rape. *Id.* at 579, 516 S.E.2d at 199. "[I]t is clear the manifest intent of the legislature was for § 14-27.7A to protect children in the three full years following age twelve." *State v. Roberts*, 166 N.C. App. 649, 652, 603 S.E.2d 373, 375 (2004), *disc. review denied*, 359 N.C. 325, 611 S.E.2d 843 (2005).

Moreover, we do not agree with defendant's contention that *Lawrence* has "altered the legal landscape" regarding the availability of a mistake of fact defense to statutory rape. In *Lawrence*, the United States Supreme Court declared unconstitutional a Texas law banning homosexual sodomy and recognized that private, consensual sexual activity between adults is constitutionally protected conduct under the due process clause of the Fourteenth Amendment. *Lawrence*, 539 U.S. at 578-79, 156 L. Ed. 2d at 525-26. However, the Supreme Court specifically limited its holding as follows:

The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle.

*Id.* at 578, 156 L. Ed. 2d at 525.

Our Court has consistently refused to apply *Lawrence* to prosecutions for sexual crimes involving minors. In *State v. Whiteley*, 172 N.C. App. 772, 616 S.E.2d 576 (2005), our Court stated that in light of the *Lawrence* Court's express exclusion of minors from its holding, "state regulation of sexual conduct involving minors . . . falls outside the boundaries of the liberty interest protecting personal relations and is therefore constitutionally permissible." *Id.* at 777, 616 S.E.2d at 580. Therefore, out Court concluded that our State's regulation of sexual conduct involving minors remains constitutional after *Lawrence. Id.* at 777, 616 S.E.2d at 580.

In *State v. Oakley*, 167 N.C. App. 318, 605 S.E.2d 215 (2004), *disc. review denied*, 359 N.C. 285, 610 S.E.2d 386 (2005), the defendant was convicted of two counts of sexual activity by a substitute parent. *Id.* at 319, 605 S.E.2d at 217. At trial, the State introduced, over the defendant's objection, fifteen photographs of men taken from the defendant's home. *Id.* at 320, 605 S.E.2d at 217. The defendant argued that, in light of *Lawrence*, the photographs which showed the defendant to be homosexual were grossly prejudicial. *Id.* at 321, 605 S.E.2d at 218. Our Court rejected this argument, holding that "Lawrence's recognition of autonomy and personal choice within consensual adult relationships does not offer constitutional protection to evidence presented in a charge of criminally prohibited activity with minors, as in the case *sub judice*." *Id.* at 322, 605 S.E.2d at 218.

In *State v. Clark*, 161 N.C. App. 316, 588 S.E.2d 66 (2003), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 81 (2004), the defendant was convicted of statutory rape. *Id.* at 317, 588 S.E.2d at 66. Relying upon *Lawrence*, the defendant argued that N.C.G.S. § 14-27.7A(a) violates equal protection because it exempts married couples. *Id.* at 320-21, 588 S.E.2d at 68. Our Court rejected the defendant's argument on the basis of the *Lawrence* Court's express exclusion of prosecutions involving minors. *Id.* at 321, 588 S.E.2d at 68-69.

While *Whiteley*, *Oakley*, and *Clark* did not involve the propriety of a mistake of fact defense to statutory rape after *Lawrence*, we find these cases, in conjunction with *Lawrence*, to be controlling. Moreover, defendant has not cited, nor has our research revealed, any case in which a State court has recognized a mistake of fact defense to statutory rape on the basis of *Lawrence*. Only seven states recognize some version of a mistake of fact defense to statutory rape, all of which did so before *Lawrence* was decided. *See State v. Ballinger*, 93 S.W.3d 881 (Tenn. Crim. App. 2001); *Lechner v. State*, 715 N.E.2d 1285 (Ind. App. 1999); *Perez v. State*, 803 P.2d 249 (N.M. 1990); *State v. Dodd*, 765 P.2d 1337 (Wash. Ct. App. 1989); *State v. Jalo*, 696 P.2d 14 (Or. Ct. App. 1985); *State v. Guest*, 583 P.2d 836 (Alaska 1978); *People v. Hernandez*, 393 P.2d 673 (Cal. 1964); *see also*, Colin Campbell, Annotation, *Mistake or Lack of Information as to Victim's Age as Defense to Statutory Rape*, 46 A.L.R.5th 499 (1997).

Defendant also makes several policy arguments in support of his contention that strict liability is inappropriate in the context of statutory rape. Defendant argues that the *mens rea* requirement is a fun-

damental principle of criminal jurisprudence and that strict liability criminal offenses are only acceptable for public welfare crimes involving little or no potential incarceration. Defendant further argues that strict liability is inappropriate because of the severe penalties and stigmatization accompanying convictions for statutory rape. However, these arguments, as well as defendant's argument that "North Carolina should move to a more reasonable position with regard to statutory rape[,]" are more appropriately addressed to the legislative branch of government, our General Assembly, which makes policy for our State. *See State v. Arnold*, 147 N.C. App. 670, 673, 557 S.E.2d 119, 121 (2001), *aff'd per curiam*, 356 N.C. 291, 569 S.E.2d 648 (2002) (noting that while courts may analyze the constitutionality of a statute, the General Assembly is the policy-making branch of the State); *see also, Clark*, 161 N.C. App. at 319, 588 S.E.2d at 67 (recognizing that although statutory rape "does carry a very severe punishment for an offense not requiring proof of force or a lack of consent, this is an issue for the legislature and not the courts").

For the reasons stated above, we overrule defendant's assignments of error grouped under this argument.

II.

**[2]** Defendant next argues the trial court committed reversible error by allowing Ms. Thrift to testify that she believed A.R.'s account of the rape. Defendant argues Ms. Thrift gave impermissible expert testimony regarding A.R.'s credibility. We review this issue *de novo*. *See State v. Bell*, 164 N.C. App. 83, 87-88, 594 S.E.2d 824, 826-27 (2004). We must also determine whether any error should result in a new trial. *See* N.C. Gen. Stat. § 15A-1443(a) (2005).

It is well settled that an expert witness may not testify "to the effect that a prosecuting witness is believable, credible, or telling the truth[.]" *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988); *see also, State v. Aguallo*, 318 N.C. 590, 350 S.E.2d 76 (1986). N.C. Gen. Stat. § 8C-1, Rule 608(a) (2005) states that "[t]he credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a)[.]" Rule 405(a) states that "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." In *Aguallo*, our Supreme Court recognized that the phrase "as provided in Rule 405(a)" was inserted into Rule 608(a) "to make clear that expert tes-

timony on the credibility of a witness is not admissible." *Aguallo*, 318 N.C. at 598, 350 S.E.2d at 81.

Defendant relies upon *State v. Hannon*, 118 N.C. App. 448, 455 S.E.2d 494 (1995). In *Hannon*, the defendant was convicted of taking indecent liberties with a "fifteen-year-old trainable mentally handicapped student at South Park High School." *Id.* at 448, 455 S.E.2d at 495. At trial, the State called an assistant principal at the high school to testify as an expert. *Id.* at 449, 455 S.E.2d at 495. Although the assistant principal had not been tendered as an expert at the time of her testimony, the assistant principal was later tendered and accepted as an expert in mental retardation and the behavior of mentally retarded children. *Id.* at 450, 455 S.E.2d at 495-96. The State asked the assistant principal to give her opinion as to the victim's truthfulness or untruthfulness, and the assistant principal testified that the victim was truthful. *Id.* at 449, 455 S.E.2d at 495. The assistant principal further testified that, based upon the victim's behavior, she could tell when the victim was telling the truth and when the victim was lying. *Id.* at 449-50, 455 S.E.2d at 495.

In *Hannon*, our Court found it was error to admit the assistant principal's testimony, whether the testimony was viewed as an opinion that the victim told the truth on that particular occasion, or whether the testimony was viewed as an expert opinion regarding the victim's credibility. *Id.* at 450, 455 S.E.2d at 496. Our Court further stated: "In this case there was no evidence of sexual intercourse other than the [victim's] testimony. Therefore, [the victim's] credibility was of critical importance." *Id.* at 451, 455 S.E.2d at 496. Thus, our Court found that the assistant principal's testimony regarding the victim's credibility amounted to plain error. *Id.*

Unlike in *Hannon*, Ms. Thrift was not tendered as an expert. Although it is true that a witness can testify as an expert without having been tendered as an expert, *see State v. Greime*, 97 N.C. App. 409, 413, 388 S.E.2d 594, 596 (1990), we do not find this occurred in the present case. Ms. Thrift was not questioned regarding her education and experience, nor was she asked for her opinion regarding A.R.'s credibility. Ms. Thrift testified that she believed A.R.'s account of the rape in the context of her role as a guidance counselor who suspected that a child had been abused. *See* N.C. Gen. Stat. § 7B-301 (2005) (requiring any person or institution who suspects that a juvenile has been abused or neglected to report the case to the director of the department of social services in the county where the juvenile resides

or can be found). Moreover, Ms. Thrift's statement regarding her conversation with A.R. was admitted only for the purpose of corroboration and Ms. Thrift testified primarily as a corroboration witness.

Even assuming, *arguendo*, the trial court erred by allowing Ms. Thrift's testimony, defendant has not shown he was prejudiced by the testimony. Relying upon *State v. McMillan*, 55 N.C. App. 25, 284 S.E.2d 526 (1981), defendant argues that Ms. Thrift's testimony was prejudicial in the present case because the jury had acquitted defendant on a charge of crime against nature. *See Id.* at 33, 284 S.E.2d at 531 (finding that the jury's acquittal on one charge "takes on added significance" when determining whether error on another charge was prejudicial). However, in the present case, defendant admitted that he engaged in sexual intercourse with A.R. As we previously stated, statutory rape is a strict liability crime, the elements of which are sexual intercourse between a person who is thirteen, fourteen, or fifteen years old and a person who is at least six years older. *See* N.C.G.S. § 14-27.7A(a). Because defendant admitted he engaged in sexual intercourse with A.R., any error in admitting Ms. Thrift's testimony was not prejudicial. We overrule this assignment of error.

III.

[3] Defendant argues the trial court committed reversible error by allowing the State to impeach defendant regarding defendant's false statements about an offense which had been the subject of a deferred prosecution. We review this issue *de novo*. *See Bell*, 164 N.C. App. at 87-88, 594 S.E.2d at 826-27. We also determine whether any error should result in a new trial. *See* N.C.G.S. § 15A-1443(a).

N.C. Gen. Stat. § 8C-1, Rule 608(b) (2005) states as follows:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Rule 609(a) provides that a witness' credibility may be attacked by evidence showing the witness has been convicted of certain crimes.

N.C. Gen. Stat. § 8C-1, Rule 609(a) (2005). However, Rule 609(c) directs that "[e]vidence of a conviction is not admissible under this rule if the conviction has been pardoned." N.C. Gen. Stat. § 8C-1, Rule 609(c) (2005). N.C. Gen. Stat. § 15A-146(a) (2005) states that when a person is charged with a crime, and the charge is later dismissed, the person may apply to a trial court for an order of expungement. N.C.G.S. § 15A-146(a) further states as follows:

> No person as to whom such an order has been entered shall be held thereafter under any provision of any law to be guilty of perjury, or to be guilty of otherwise giving a false statement or response to any inquiry made for any purpose, by reason of his failure to recite or acknowledge any expunged entries concerning apprehension or trial.

Defendant specifically argues that

> the prohibition on the use of [a] conviction for which a witness has been pardoned, *see* N.C. R. Evid. 609(c), in tandem with the prohibition in the expungement statute from using information about a person that has been removed from the record, *see* N.C. Gen. Stat. § 15A-146, means the prosecutor should not have been able to cross-examine [defendant].

However, in the present case, the State properly cross-examined defendant concerning prior false statements to police. As our Court held in *State v. Springer*, 83 N.C. App. 657, 351 S.E.2d 120 (1986), *disc. review denied*, 319 N.C. 226, 353 S.E.2d 410 (1987), a false swearing to a magistrate is a specific instance of conduct showing untruthfulness. *Id.* at 660, 351 S.E.2d at 122. Likewise, in the present case, defendant's false statements to police regarding the theft of a camera showed defendant's untruthfulness. The State did not ask defendant about a conviction which had been expunged. The State limited its inquiry to defendant's false statements.

Defendant also relies upon *State v. Seay*, 59 N.C. App. 667, 298 S.E.2d 53 (1982), *disc. review denied*, 307 N.C. 701, 301 S.E.2d 394 (1983) and *State v. Cook*, 165 N.C. App. 630, 599 S.E.2d 67 (2004). *In Seay*, the defendant was impeached by evidence of a crime for which he had been pardoned. *Seay*, 59 N.C. App. at 670, 298 S.E.2d at 55. North Carolina had not yet adopted Rule 609(c), which now prohibits such impeachment. Our Court noted that the Federal Rules of Evidence would not allow such cross-examination but found no

reversible error. *Id.* In the present case, defendant was not impeached by evidence of a conviction which had been expunged. Defendant was properly impeached regarding false statements he had made to police.

In *Cook*, the defendant was convicted of embezzlement. *Cook*, 165 N.C. App. at 632, 599 S.E.2d at 69. The trial court allowed the State to present extrinsic evidence during its case in chief that the defendant had previously embezzled money on another occasion. *Id.* at 635, 599 S.E.2d at 71. However, the defendant had completed the requirements of a deferred prosecution in regard to that incident and the charge had been dropped. *Id.* The defendant argued that the admission of the evidence violated Rule 404(b). *Id.* at 634, 599 S.E.2d at 70.

Our Court held that the trial court erred by admitting the evidence because the sole purpose of introducing the evidence was to attack the defendant's credibility. *Id.* at 636-38, 599 S.E.2d at 72-73. We also held that, by allowing the State to introduce extrinsic evidence regarding the prior, unrelated incident of embezzlement, "the trial court allowed the State to circumvent the strict limitations of Rules 608 and 609." *Id.* at 637, 599 S.E.2d at 72. Our Court recognized that Rule 608(b) does not allow the State to prove specific instances of conduct related to untruthfulness by extrinsic evidence. *Id.* at 636-37, 599 S.E.2d at 72. Under Rule 609, the State may not offer evidence of details underlying a conviction. *Id.* at 637, 599 S.E.2d at 72. Our Court did not hold that the evidence was inadmissible because the defendant had completed a deferred prosecution with respect to the unrelated charge.

In the present case, the State did not offer extrinsic evidence of defendant's false statements. The State, pursuant to Rule 608(b), inquired into defendant's false statements on cross-examination of defendant. *See* N.C.G.S. § 8C-1, Rule 608(b) (stating that specific instances of conduct of a witness, if probative of untruthfulness, may "be inquired into on cross-examination of the witness"). As discussed above, the State in the present case complied with the requirements of Rule 608(b).

Even assuming, *arguendo*, the trial court erred by allowing the State to cross-examine defendant regarding defendant's false statements, any error was harmless. As we stated in the previous section of this opinion, defendant admitted that he engaged in sexual intercourse with A.R. We overrule this assignment of error.

Defendant does not set forth arguments pertaining to his remaining assignments of error. We deem those assignments of error abandoned pursuant to N.C.R. App. P. 28(b)(6).

No error.

Judges McCULLOUGH and GEER concur.