BRYANT, Judge.
Where the State presented overwhelming evidence of defendant's guilt and defendant was not prejudiced by admission of the challenged testimony, we find no error. Additionally, where mistake of age is not a valid defense to the offenses charged, the trial court's refusal to allow defense counsel to argue the defense of mistake of age to the jury, as well as the court's refusal to instruct the jury on mistake of age, was not reversible error.
Paul Anthony Ramey ("defendant") appeals from judgments entered upon his convictions for statutory rape, attempted statutory rape, and two counts of taking indecent liberties with a child.
The State presented the following evidence at trial: Betty[1] was born in 2001 and was fourteen years old on the date of trial. Betty testified that when she was thirteen years old, she maintained an online profile on Scout, an application or "app" which was connected to her Facebook page and which she had downloaded on her phone. Betty's Facebook page and connected Scout page falsely stated that she was a graduate of the University of Virginia, was a model at Hollister, and had left a job at Forever 21, presenting the appearance that she was nineteen years old. Defendant, who was thirty-five years old at trial, contacted Betty on Scout by sending her a picture of his penis and asking if she would have sex with him for $20.00. Betty declined.
Shortly thereafter, Betty switched to a different app called Kik, and she and defendant started conversing on Kik. Betty soon agreed to meet with defendant. Defendant drove from Asheboro to Winston-Salem and met with Betty behind a church across the street from her apartment complex. Betty got into the backseat of defendant's car. Defendant then unbuckled her belt, pulled down her shorts, and attempted to have sex with her. Betty testified that defendant was "rubbing his penis inside of my vagina lips." Defendant, however, was unable to maintain an erection, and eventually stopped. Betty went home.
Betty and defendant continued to converse on Kik. A week or two later, Betty agreed to go with defendant to his father's home in Asheboro for a weekend. Betty testified that when they arrived at the home, defendant's father was not there, and she and defendant had sex. At the end of the weekend, defendant brought Betty back to her home in Winston-Salem.
The next time Betty saw defendant, he got a room at a Motel 6 in Winston-Salem. Defendant told Betty that his father did not want them staying at his house. Betty testified that while in the hotel room, defendant "started fingering [her] in [her] vagina" and grabbing her "boobs." Defendant then pulled down her pants, and they had sex. The next day, defendant checked out of the hotel, and Betty and defendant spent the weekend together in Asheboro. However, because defendant's father did not want her in the house, they had to sleep outside in a tent. Betty testified that she and defendant had sex in the tent in the backyard of the house. Defendant returned Betty to her home the next day.
Two weeks later, Betty went with defendant to his mother's home in Aiken, South Carolina for a weekend. Betty testified that she and defendant had sex while at his mother's home. At the end of the weekend, defendant returned Betty back to her apartment complex.
Betty testified that during the weekend she spent with defendant in South Carolina, her mother started calling and texting her trying to ascertain her whereabouts. Betty believed that her mother was "catching on" to her relationship with defendant. Betty decided to tell defendant she did not want to continue their relationship, but she agreed to meet him at the church across from her apartment complex. When they met, she started to talk, and defendant started trying to undress her. Betty told defendant to stop, and as she was talking, defendant pushed her shoulders against the brick wall of the church. Betty told defendant that she did not call him to have sex with him, and he was "smiling" and "thinking it was a joke."
While defendant was trying to get his hand into Betty's pants, Victor Peebles drove up on a motor scooter. Peebles testified that he saw defendant with a "little girl pinned up against [a] wall." Defendant was trying to pull down the girl's pants, and she was trying to pull them back up. Peebles observed defendant "smack" Betty, so he approached them and asked what they were doing. Defendant told Peebles to "Mind your business. This is my wife." Peebles responded, "Ain't no way she could be your wife.... She [is] old enough to be your daughter." Peebles told Betty to run home to her "mama." Defendant then attempted to leave, and Peebles tried to stop him. Defendant threw Peebles's phone and keys into a field, and they began to fight. People in the neighborhood came and kept defendant from leaving, and eventually the police arrived.
Corporal B. Sisk of the Winston-Salem Police Department responded to the scene of a "rape in progress." Corporal Sisk found defendant standing in the parking lot of the church, shirtless and with blood on his face, and ordered him to sit on the ground. Corporal Sisk asked defendant what happened, and defendant told him that he was attacked by a man on a scooter. Defendant then told Corporal Sisk about meeting Betty on a "chat line" and said that her profile identified her as being nineteen years old. Defendant stated they had met many times over a period of about three months. Defendant admitted to slapping Betty, but said it "was done in a playful manner." Corporal Sisk asked defendant if he and Betty had engaged in sex, and defendant told him that they had vaginal sexual intercourse on at least two or three occasions. Defendant was then transported to the hospital due to his injuries.
Detective R.J. Davis of the Winston-Salem Police Department's Special Victims Unit was assigned to investigate the allegations against defendant. Detective Davis interviewed Betty, and she disclosed that she had sexual intercourse with defendant. The next morning, Betty's mother took her to the hospital, where she was given a pregnancy test and tested for sexually transmitted diseases. The pregnancy test was positive.
Defendant was convicted of statutory rape and attempted statutory rape of a 13, 14, or 15 year old, and two counts of taking indecent liberties with a child. The trial court sentenced defendant to: (1) a term of sixteen to twenty-nine months of imprisonment for taking indecent liberties with a child (14 CRS 059009 Off. 52); (2) a concurrent term of sixteen to twenty-nine months for taking indecent liberties with a child (14 CRS 059009 Off. 53); (3) a term of 240 to 348 months of imprisonment for statutory rape, to be served consecutive to 14 CRS 059009 Off. 52, and; (4) 157 to 249 months of imprisonment for attempted statutory rape, to be served consecutive to 14 CRS 059009 Off. 53. The trial court also ordered defendant to enroll in satellite-based monitoring for the rest of his natural life. Defendant entered written notice of appeal.
_________________________
On appeal, defendant argues that the trial court erred by: (I) allowing the State to present evidence that defendant had other sexual contact with the victim; (II) refusing defendant's request to argue to the jury defendant's lack of knowledge of the victim's true age; and (III) rejecting defendant's proposed jury instruction that the State bore the burden of proving that defendant knew the victim was 13, 14, or 15 years old before he could be convicted. After careful review, we find no error.
I
Defendant first argues that the trial court erred when it permitted the State to present evidence concerning his conduct with Betty at his father's home in Asheboro and his mother's home in Aiken, South Carolina. Defendant was indicted and convicted for sexual acts that occurred in Forsyth County, not the alleged sexual acts that occurred in Asheboro and South Carolina. Prior to trial, the State moved to have evidence concerning these other alleged sexual acts admitted pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b) (2015). The State argued that the evidence was admissible to show a common scheme or plan, and also to demonstrate defendant's knowledge and intent. Defendant objected, the court conducted a voir dire examination of Betty, and the trial court deemed the evidence to be admissible.
Defendant argues that the trial court erred and that this evidence should not have been admitted. We conclude, however, that defendant failed to preserve this issue. To properly preserve an issue for appeal, a defendant is required to make a timely objection at trial. See State v. Thibodeaux , 352 N.C. 570, 577, 532 S.E.2d 797, 803 (2000) ; N.C. R. App. P. 10(a)(1) (2017). "To be timely, an objection to the admission of evidence must be made 'at the time it is actually introduced at trial.' " State v. Ray , 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010) (emphasis added) (quoting Thibodeaux , 352 N.C. at 581, 532 S.E.2d at 806 ).
Here, defendant opposed the admission of the evidence concerning the alleged sexual acts occurring in Asheboro and South Carolina prior to the voir dire hearing, but he failed to object to the evidence in the presence of the jury when it was actually offered. Thus, his objection was insufficient to preserve the issue for appellate review. Id. ("[I]n order to preserve for appellate review a trial court's decision to admit testimony, 'objections to [that] testimony must be contemporaneous with the time such testimony is offered into evidence' and not made only during a hearing out of the jury's presence prior to the actual introduction of the testimony." (alteration in original) (quoting Thibodeaux , 352 N.C. at 581-82, 532 S.E.2d at 806 )). We further note that defendant does not argue that the trial court committed plain error by admitting the evidence, and thus he waived his right to have this issue reviewed under that standard. See N.C. R. App. P. 10(a)(4) ; see also State v. Lawrence , 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012).
Even assuming arguendo that defendant had preserved his argument by presenting a timely objection, he would not be entitled to a new trial. "To receive a new trial based upon a violation of the Rules of Evidence, a defendant must show that the trial court erred and that there is a 'reasonable possibility' that without the error 'a different result would have been reached at the trial.' " State v. Ray , 364 N.C. 272, 278, 697 S.E.2d 319, 322 (2010) (citation omitted) (quoting N.C. Gen. Stat. § 15A- 1443(a) (2015)). In the instant case, not only did Betty testify at length regarding her sexual contact with defendant, but defendant also admitted to police that he had sexual intercourse with Betty "two or three different times." Defendant was also observed by Peebles attempting to remove Betty's clothes, and he referred to Betty as his "wife." We therefore conclude that the State presented overwhelming evidence of defendant's guilt, and defendant was not prejudiced by admission of the challenged testimony.
II & III
Defendant next argues that the trial court erred by refusing his request to argue to the jury that he believed Betty was over eighteen years of age, and rejecting his proposed jury instruction that the State bore the burden of proving that he knew the victim was 13, 14, or 15 years old before he could be convicted. Defendant acknowledges, however, the existence of contrary legal authority. State v. Browning , 177 N.C. App. 487, 491-92, 629 S.E.2d 299, 303 (2006) (stating that statutory rape is a strict liability crime and criminal intent is not an element of the offense); State v. Anthony , 133 N.C. App. 573, 579, 516 S.E.2d 195, 199 (1999) (holding that mistake of age is not a defense to statutory rape), aff'd , 351 N.C. 611, 528 S.E.2d 321 (2000). Because mistake of age is not a valid defense to the offenses charged, we hold that the trial court's refusal to allow defense counsel to argue the defense of mistake of age to the jury, as well as the court's refusal to instruct the jury on mistake of age, was not reversible error. State v. Breathette , 202 N.C. App. 697, 706, 690 S.E.2d 1, 6-7 (2010). Accordingly, we find no error in the judgments of the trial court.
NO ERROR.
Report per Rule 30(e).
Judges DAVIS and ZACHARY concur.

A pseudonym is used to protect the identity of the juvenile and promote ease of reading.