STATE OF NORTH CAROLINA v. HAROLD DANIEL McCRAW

No. 47

(Filed 15 July 1980)

1. **Criminal Law § 66.16— pretrial photographic identification procedure—confrontation in courtroom—totality of circumstances—reliability of in-court identification**

A robbery victim's in-court identification of defendant as the robber was not tainted by out-of-court identification procedures, including the victim's misidentification of another person as the robber from mug books, the victim's statement that he was only 80% sure when he picked defendant's photograph from a photographic lineup, and his viewing of defendant in a courtroom through no arrangement of law officers, since, viewing the totality of circumstances, there was sufficient evidence of the reliability of the victim's in-court identification where the evidence tended to show that the victim had ample opportunity to view the robber in a well lighted store at 8:30 a.m. on a sunny summer morning; the victim attentively viewed the robber both before and during the robbery and had in fact visually measured the robber's height against items in the store; the victim's description included the essential identifying characteristics of height, slender build and some degree of facial hair; the photographs which the victim originally picked out resembled defendant in facial shape, hair style and bone structure; the victim unhesitatingly and with certainty identified defendant once he confronted him in person; and there were only four months between the crime and the confrontation with defendant.

2. **Criminal Law § 99.3— court's questions concerning evidence—no expression of opinion**

The trial court did not improperly express an opinion to defendant's prejudice (1) where the court either misunderstood or incorrectly remembered earlier testimony and on that basis improperly corrected defense counsel while he was cross-examining the robbery victim, since the witness corrected the misapprehension without prompting from defense counsel, and (2) where the court questioned defendant concerning the location of the George Washington bridge in N.Y., since the question did not challenge defendant's credibility, defendant adequately explained his testimony, and the judge's and defendant's understanding of the location of the bridge was not of any importance in the case.

3. **Robbery § 3— evidence concerning another alleged suspect—evidence admissible**

In a prosecution for robbery with a dangerous weapon, defendant was not prejudiced by testimony concerning another alleged suspect in the case since

State v. McCraw

evidence of the suspect's presence near the scene of the crime was relevant to explain details and events surrounding that occurrence, particularly since an eyewitness testified that the robber resembled the suspect but was not the suspect, and evidence that defendant was subsequently found in the suspect's presence in N.Y. was not prejudicial in light of earlier evidence which established the connection between defendant and the suspect.

4. **Criminal Law § 96— evidence withdrawn from jury's consideration—defendant not entitled to mistrial**

Defendant was not entitled to a mistrial where a witness made reference to defendant's arrest in N.Y., defendant objected and moved to strike, and the judge instructed the jury to disregard the testimony, since there was nothing in the record to suggest that the jury would have considered the stricken testimony.

DEFENDANT appeals from sentence imposed by *Bailey, James H. Pou, Judge*, at the 20 August 1979 Criminal Session of Superior Court, CUMBERLAND County.

Defendant was charged in an indictment, proper in form, with the crime of robbery with a dangerous weapon, a violation of G.S. 14-87. He entered a plea of not guilty.

Prior to trial, defendant made a motion to suppress the victim's identification of him. After a *voir dire* hearing, at which the State presented two witnesses, the judge made findings of fact and conclusions of law and denied the motion.

At trial, State's evidence tended to show that on Saturday, 15 July 1978, at approximately 8:15 a.m., Donald Steven Plummer, then aged 32, was working in his father's convenience store in Fayetteville. A lone customer came into the store, walked to the back, picked up a carton of milk, then proceeded to the counter and robbed Mr. Plummer of some $430.00 at gunpoint. Mr. Plummer identified the defendant in court as the man who had robbed him and testified as to the pre-trial identification procedures in which he had participated.

The State also presented the corroborating testimony of several Fayetteville police officers.

Defendant presented his own testimony and that of two friends. His testimony tended to show that he was a sergeant in the Army receiving a take home pay of some $600.00 per month. He also testified that at the time of the robbery on 15 July 1978, he was sleeping late at a friend's house after attending an O'Jays

concert in the Cumberland County Arena the night before. The testimony of his two friends corroborated this alibi.

The State rebutted the defendant's alibi with the testimony of the assistant manager of the Cumberland County Arena. The assistant manager testified that on 14 July 1978, the O'Jays had not played at the Cumberland County Arena.

The jury returned a verdict of guilty of robbery with a dangerous weapon. Defendant was sentenced to a term of 16 years to life.

Other pertinent facts will be discussed in the body of this opinion.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Alan S. Hirsh and Special Deputy Attorney General John R. B. Matthis, for State appellee.*

*John G. Britt, Jr., and Fred J. Williams, Assistant Public Defenders, for defendant appellant.*

CARLTON, Justice.

Defendant groups several assignments of error into six arguments. We find no prejudicial error and affirm.

I.

Defendant first asserts that the trial court erred in failing to suppress the victim's in-court identification. Defendant argues this in-court identification was tainted by impermissibly suggestive out-of-court identification procedures. He argues this taint was not removed by any showing that the in-court identification was based on a recollection independent of those improper out-of-court procedures. Defendant cites *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated,* 428 U.S. 902, 96 S.Ct. 3202, 49 L.Ed. 2d 1205 (1976), in contending that such tainted in-court identification is inadmissible.

The record reveals that the victim in this case, Donald Steven Plummer, made a misidentification prior to his initial out-of-court identification of this defendant. Soon after the robbery, on 17 July 1978, Plummer was shown several mug books. At this time he identified the photo of one man he was "99% sure" was

the robber. Investigation by the Fayetteville police department, however, revealed that the pictured individual had been incarcerated on the date of the robbery and could not have participated in it. Plummer was told his choice was wrong.

Thereafter, in early September, he saw a picture of Norris Taylor in a Fayetteville paper and called police to tell them that Taylor "looked very similar to the man . . . picked out in the mug book."

Subsequently, on 27 October 1978, Plummer was shown another photographic lineup and again picked out a picture, this time of the defendant. However, he stated then that he was only 80% sure of his identification and wanted to see the pictured individual in person before making conclusive identification.

On 28 November 1978, Plummer went to the Cumberland County Courthouse in answer to two subpoenas. Although defendant's name was on one of the subpoenas, Plummer testified on *voir dire* that he thought that both subpoenas concerned an unrelated break-in at the convenience store which did not involve this robbery. While waiting in the courtroom, he heard defendant's name called. He knew the name was on one of the subpoenas, so he looked around the courtroom and eventually saw a man he recognized as the robber in this case. When called by court officials to a conference room, he informed them that he had seen the individual who had robbed him at gunpoint in July. Defendant contests this sequence of events as being impermissibly suggestive.

As a general rule, evidence unconstitutionally obtained is excluded from testimony in both state and federal courts. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961); *State v. Headen,* 295 N.C. 437, 245 S.E. 2d 706 (1978); *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969), *cert. denied,* 396 U.S. 1024, 90 S.Ct. 599, 24 L.Ed. 2d 518 (1970).

What constitutes unconstitutionally suggestive identification evidence, however, has been subjected to changing standards of admissibility. In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967), the United States Supreme Court held that if, considering the totality of circumstances, a pretrial identification procedure is found to be unnecessarily suggestive and con-

ducive to irreparable mistaken identification, submission of the identification at trial violates due process. The Court held that a two-step process had to be used in applying this standard:

(1) First, a reviewing court had to determine whether the out-of-court procedure was unnecessarily suggestive. If so, testimony regarding the out-of-court procedure was inadmissible.

(2) Second, in-court identification was still permissible, only if the out-of-court suggestiveness was *not* "conducive to irreparable mistaken identity." In this jurisdiction, this often meant that the in-court identification was admissible if the State could show that the in-court identification was of independent origin from the suggestive pre-trial procedures. *See, e.g., State v. Headen, supra; State v. Henderson, supra.*

Applying this analysis, the Supreme Court in *Stovall* held that in-court identification was permissible where a critically injured witness had been shown defendant alone and handcuffed at her hospital bedside. In *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed. 2d 402 (1969), however, the Supreme Court held that an in-court identification procedure was inadmissible where it was preceded by repeated pre-trial confrontations which eventually elicited a positive identification of the defendant. Such pre-trial suggestiveness was "so arranged to make the resulting identification inevitable," 394 U.S. at 443, 89 S.Ct. at 1129, 22 L.Ed. 2d at 407, and the identification testimony was inadmissible.

And in *State v. Headen, supra,* this Court held an in-court identification inadmissible where twenty months after a crime, a Cumberland County deputy sheriff identified the defendant to an eyewitness, indicated the defendant was implicated in the crime and apparently repeatedly assured the eyewitness of the defendant's complicity. Considering this unnecessary suggestiveness along with the fact that the witness had viewed the crime on a dark night, was not at the time particularly concerned with getting a clear visual sighting of the criminal, could not identify a photograph without prompting and could provide only a general description, this Court concluded that the impermissible pre-trial procedure gave rise to a substantial likelihood of irreparable misidentification at trial.

The *per se* approach to identification evidence, however, is no longer the law of the land. In *Neil v. Biggers*, 409 U.S. 188, 93

S.Ct. 375, 34 L.Ed. 2d 401 (1972), the United States Supreme Court first cast doubt on the analysis by holding that testimony about even suggestive pre-trial identification procedures was admissible if, considering the totality of the circumstances, the identification procedure was reliable. It thus moved the focus of the inquiry away from the pre-trial procedures used and toward the totality of the circumstances surrounding the actual crime. If identification was reliable, it was admissible despite the suggestiveness of out-of-court procedures.

The Court set out five indicia of reliability: (1) the opportunity of the witness to view the criminal, (2) the witness's degree of attentiveness, (3) the accuracy of the witness's principal description, (4) the level of certainty at confrontation, and (5) the length of time between the crime and the confrontation. In *Neil v. Biggers*, however, the Supreme Court observed that the challenged procedure had occurred before the facts involved in *Denno v. Stovall, supra.* The implication was that the *Denno v. Stovall per se* rule still controlled cases arising after the Supreme Court handed down that earlier decision.

*Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977) negated the implication and removed any doubt whether to apply the *per se* standard or the totality of circumstances standard. In *Manson v. Brathwaite*, the Supreme Court conclusively held that due process did not compel exclusion of pre-trial identification evidence obtained by suggestive and unnecessary police identification procedures so long as, under the totality of circumstances, the identification was reliable.

There, the defendant in a drug case claimed that a one-photograph "lineup" was impermissibly suggestive. Explicitly applying the totality of circumstances analysis, the Supreme Court held that the five reliability factors had all been met adequately and the suggestive pre-trial identification procedure was admissible.

Thus, after *Manson v. Brathwaite, supra*, "[i]t is the strong probability of misidentification which violates a defendant's right to due process. Unnecessarily suggestive circumstances alone do not require the exclusion of identification evidence." *State v. Nelson and Jolly*, 298 N.C. 573, 601, 260 S.E. 2d 629, 649 (1979). *See also, State v. Green*, 296 N.C. 183, 250 S.E. 2d 197 (1978).

Like the defendant in *Manson v. Brathwaite*, defendant here cannot successfully protest the in-court identification of him in this case. There is sufficient evidence of the reliability of the victim's in-court identification here to withstand any attempt by defendant to show that any alleged impermissible pre-trial procedure raised the strong likelihood of misidentification.

[1] Viewing the totality of the circumstances here, it is unmistakable that:

(1) The witness Plummer had ample opportunity to view the robber in a well-lighted store at 8:30 a.m. on a sunny summer morning.

(2) The witness had attentively viewed the robber both before and during the robbery and had in fact had the foresight to visually measure the robber's height against items in the store.

(3) The witness's description, while not ideal nor particularly detailed, did include the essential identifying characteristics of height, slender build and some degree of facial hair. Furthermore, the photographs this witness initially picked out resembled the defendant in facial shape, hair style and bone structure. While this is admittedly the least sure of the several factors, considered along with others, it is an indication of the reliability of this witness' identification.

(4) The witness unhesitatingly and with certainty identified the defendant once he confronted the defendant in person. There was nothing impermissibly suggestive in the unarranged pre-trial courtroom procedure. *See State v. Long*, 293 N.C. 286, 237 S.E. 2d 728 (1977).

(5) There were only four months between the crime and the confrontation with the defendant.

Given these factors, we do not believe that the out-of-court procedures used here resulted in an unrealiable in-court identification. *Neil v. Biggers, supra.* Short of that, it is for a jury to determine the credibility of this witness's identification of the defendant. *Manson v. Brathwaite, supra.* We find nothing prejudicial in the identification procedures used and this assignment of error is overruled.

## II.

Defendant next contends that the trial judge twice unfairly interjected his opinion into the defendant's trial by interposing and sustaining an objection and by questioning the defendant about an irrelevant matter. Both of these actions, he contends, were in violation of G.S. 15A-1222.

G.S. 15A-1222 provides, "The judge may not express during any stage of the trial any opinion in the presence of the jury on any question of fact to be decided by the jury."

[2] Defendant argues that the judge made such an impermissible opinion statement during the following exchange which occurred while defense counsel cross-examined the victim Plummer about his previous misidentification of the robber:

Q. And I believe that you have testified that at the time that you picked that photograph out on July 17, 1978 you were 99% sure that . . .

COURT: Objection is sustained, he did not say 99%, if you are going to quote him, quote him correctly.

MR. WILLIAMS: Thank you, Your Honor.

Q. Do you recall what statement you made to police officers as to your certainty concerning the individual you had picked out?

A. Right. Well, I believe at the time I did say something like 99%, but I was reasonably certain that it was him.

We fail to see how the quoted proceeding constituted an opinion by the court in violation of G.S. 15A-1222. It does appear from the record that the trial court misunderstood or misremembered previous testimony. The witness had testified that he was 99% sure of the particular photograph. However, this misapprehension was corrected by the witness without prompting from defense counsel. We do not believe the trial judge's mistake here amounted to prejudicial error.

Defendant secondly argues that the trial court's questioning of him as to the location of the George Washington Bridge in New York City amounted to an opinion casting doubt on his credibility. While it is true that a judge is not allowed to question a witness's

credibility, *State v. Kirby,* 273 N.C. 306, 160 S.E. 2d 24 (1968), it is also true that it is proper and occasionally necessary for a trial court to examine a witness. *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968), *cert. denied,* 393 U.S. 1087, 89 S.Ct. 876, 21 L.Ed. 2d 780 (1969). Here the defendant testified during cross-examination that while on a trip to Philadelphia, he fell asleep in a car driven by a man named Charles Butler and was awakened 25 or 30 miles outside of New York City on the George Washington Bridge. The judge broke in to ask, "Doesn't the George Washington Bridge go right out on Riverside Avenue in New York, in New York City?" The defendant answered, "No. That's as far as I know. My understanding is in the outside of New York in New Jersey, so I figured it's twenty-five miles, thirty miles away from New York." Again, in this colloquy, we see nothing prejudicial. Apparently the judge and defendant did not have a common understanding of the location of the George Washington Bridge. The defendant adequately explained his answer. Furthermore, the understanding of the location of the bridge was not of any importance in this case. Thus, we find no prejudicial error in this assignment of error.

III.

[3] Defendant thirdly argues that in admitting testimony about another alleged suspect in this case, the trial court committed prejudicial error.

The record reveals that immediately after the robbery, the victim Plummer observed a man he knew as Charles Butler lurking in the area. Butler was accosted and questioned on the street by police at the time but was never arrested. The defendant was subsequently stopped by police in the company of this same Charles Butler while crossing the George Washington Bridge in New York. Defendant contends that the evidence linking Butler to the scene of the crime and to friendship with defendant was irrelevant and prejudicial.

The standard of admissibility of evidence based on relevancy and materiality is so elastic and the variety of possible fact situations so numerous that an exact rule of admissibility is impossible to precisely formulate. 1 *Stansbury's North Carolina Evidence* § 78 (Brandis rev. ed. 1973) citing *Bell v. Walker & Herrington,* 48 N.C. 320 (1856). *See also State v. Perry,* 298 N.C. 502, 259 S.E. 2d 496 (1979). Generally, however, no fact or circumstance in any

way connected with the matter in issue or from which any inference of the disputed fact can reasonably be drawn ought to be excluded from the jury. *Abbitt v. Bartlett*, 252 N.C. 40, 112 S.E. 2d 751 (1960). Evidence of Charles Butler's presence near the scene of the crime is thus relevant to explain details and events surrounding that occurrence particularly since the eyewitness Plummer testified the robber resembled Butler but was not Butler. *Cf. State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976) (in criminal cases, "[e]very circumstance that is calculated to throw any light upon the supposed crime is admissible;" the weight of such evidence is for the jury). *Accord, State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976); *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968).

Evidence of defendant's presence with Butler later in New York City, however, is not so "connected with the matter in issue," as to be necessarily relevant. Ordinarily the admission of irrelevant evidence is considered harmless error. *State v. Shaw*, 284 N.C. 366, 200 S.E. 2d 585 (1973); *Deming v. Gainey*, 95 N.C. 528 (1886); 1 *Stansbury's North Carolina Evidence* §§ 77, 80 (Brandis rev. ed. 1973). Here defendant argues that because of the weakness of the State's case against him, this evidence must have substantially contributed to defendant's conviction. Defendant apparently forgets, however, that earlier in his testimony, he had admitted knowing Charles Butler as the brother-in-law of defendant's girl friend. Thus the connection between Butler and defendant was already established before this testimony was admitted. Defendant also apparently forgets that the State's case in main depended upon the identification of the eyewitness Plummer. In view of these facts, we do not find there is a reasonable possibility that the evidence complained of might have contributed to defendant's conviction. *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972). Accordingly, we overrule this assignment of error.

IV.

[4] Defendant fourthly asserts that the trial court erred in denying defendant's motion for a mistrial. During direct examination of the State's witness Nash, a police officer, the officer made reference to defendant's arrest on the George Washington Bridge. Defendant argues that evidence that he had been arrested placed his good character in issue and forced him to take the stand in his

own behalf, rendering it impossible for him to receive a fair trial. Defense counsel objected and moved to strike, which objection was properly sustained. The judge instructed the jury to disregard the testimony. Thereupon defense counsel moved for a mistrial.

Ruling on a motion for mistrial in a criminal case less than capital rests largely in the discretion of the trial court. *State v. Battle*, 267 N.C. 513, 148 S.E. 2d 599 (1966). However, this discretionary power is not unlimited; a motion for mistrial must be granted if there occurs an incident of such a nature that it would render a fair and impartial trial impossible under the law. *State v. Crocker*, 239 N.C. 446, 80 S.E. 2d 243 (1954). We see the occurrence of no such incident here.

When a jury is instructed to disregard improperly admitted testimony, the presumption is that it will disregard the testimony. Lacking other proof—of which there is none here—a jury is presumed to be rational. There is nothing in this record which leads us to believe the jury would have considered the stricken testimony and defendant's motion for mistrial was properly denied.

## V.

Defendant next contends that the trial court erred in denying his request that a State's rebuttal witness be required to produce further evidence. This ignores well-settled law. It is clearly within the discretion of a trial judge to reopen a case to admit additional evidence. *State v. Shutt*, 279 N.C. 689, 185 S.E. 2d 206 (1971), *cert. denied*, 406 U.S. 928, 92 S.Ct. 1805, 32 L.Ed. 2d 130 (1972). There is nothing in this case to indicate an abuse of that discretion. Apparently the only thing this further evidence would have shown was that the O'Jays concert—defendant's rebutted alibi—had taken place in Cumberland County some two weeks after the armed robbery. We do not believe this information would have been helpful in reestablishing defendant's alibi.

We have carefully considered all further errors assigned by defendant and have reviewed the entire record before us. We are convinced that defendant had a fair trial, free from prejudicial error.

No error.