STATE OF NORTH CAROLINA v. SAMUEL KRIS HUNT

No. COA10-666-2

(Filed 17 July 2012)

**1. Constitutional Law—effective assistance of counsel— counsel's performance below objective standard—opened door to testimony—no prejudice**

Defendant did not receive ineffective assistance of counsel in a trial for second-degree sexual offense and crime against nature where trial counsel opened the door to testimony about other sexual offense charges pending against defendant. Although trial counsel's performance fell below an objective standard of reasonableness because there was no strategic benefit in opening

the door to this testimony, the evidence about the other pending sexual offense charges did not likely affect the jury's verdicts, and defendant was not prejudiced by his trial counsel's error.

**2. Constitutional Law—effective assistance of counsel —double jeopardy—second-degree sexual offense—crime against nature—lesser-included offense**

Defendant received ineffective assistance of counsel in a trial for second-degree sexual offense and crime against nature to the extent that his trial counsel failed to argue double jeopardy. On the particular facts of defendant's case, crime against nature was a lesser-included offense of second-degree sexual offense, and entry of judgment on both convictions subjected defendant to unconstitutional double jeopardy.

**3. Attorneys—potential conflict of interest—trial court's consideration—denial of motion for mistrial—no abuse of discretion**

The trial court did not abuse its discretion in refusing to grant defendant's motion for a mistrial in a second-degree sexual offense and crime against nature case based on defense counsel's potential conflict of interest. The trial court's actions reflected its consideration of defense counsel's potential conflict of interest to the extent it believed was adequate and sufficient, and the court's subsequent denial of defendant's motion for a mistrial cannot be characterized as so arbitrary that it could not have been the result of a reasoned decision.

Appeal by Defendant from judgment entered 8 October 2009 by Judge Edwin G. Wilson, Jr., in Randolph County Superior Court. Heard in the Court of Appeals 26 October 2010. An opinion was filed on 3 May 2011 vacating the 8 October 2009 judgment. *See State v. Hunt,* _____ N.C. App. _____, 710 S.E.2d 339 (2011). The North Carolina Supreme Court, by opinion filed on 9 March 2012, reversed and remanded to the Court of Appeals for consideration of Defendant's remaining issues on appeal. *See State v. Hunt,* _____ N.C. _____, 722 S.E.2d 484 (2012).

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth J. Weese, for the State.*

*M. Alexander Charns for Defendant.*

STEPHENS, Judge.

## Procedural History and Evidence

In *State v. Hunt*, \_\_\_\_ N.C. App. \_\_\_\_, \_\_\_\_, 710 S.E.2d 339, 340 (2011), this Court vacated Defendant Samuel Kris Hunt's convictions for second-degree sexual offense and crime against nature after concluding that the State failed to present sufficient evidence of the victim's mental disability to survive Defendant's motions to dismiss. Our Supreme Court reversed, holding that the State presented sufficient evidence to survive Defendant's motions to dismiss the charges of second-degree sexual offense and crime against nature, and remanded for this Court to consider Defendant's issues on appeal not addressed by our original opinion. *State v. Hunt*, \_\_\_\_ N.C. \_\_\_\_, \_\_\_\_, 722 S.E.2d 484, 492 (2012).

On 6 October 2009, Defendant was tried on charges of second-degree sexual offense and crime against nature during the criminal session of the Randolph County Superior Court. The State's evidence tended to show that on 25 May 2008 Defendant's daughter Madison[1] had a sixteenth birthday party followed by a sleepover at Defendant's home, which her friends Clara, then age seventeen, and Ashley attended. Defendant and his wife went out drinking with another couple around 9:00 p.m., returning at about 3:00 a.m. the next morning.

Clara testified that, when Defendant returned home, she was watching a movie with Madison, Ashley, and Defendant's four younger children. Defendant came and tapped Clara on the arm, motioning for her to follow him into the kitchen. Once in the kitchen, Defendant began touching Clara on her breasts, vagina, and "butt" and asked if she "like[d] it[.]" Defendant then pulled his penis out of his sweatpants and forced Clara's head down. Clara was scared, but put Defendant's penis in her mouth. When Clara tried to raise her head, Defendant pushed her head back down and forced his penis into her mouth again. Defendant told her, "Don't tell nobody. I can get in serious trouble." Eventually Clara pulled her head away. Defendant then told Clara to go to a bedroom and take off her clothes, but instead she returned to the living room.

Clara told Ashley what Defendant had done, and later told Madison, asking for protection from Defendant. The next morning, Madison told her mother what had happened. The mother confronted Defendant, who eventually admitted what had occurred. When Clara returned home that morning and told her father what had happened,

---

1. We refer to Defendant's minor daughter and the party guests by pseudonyms to protect their identities.

he took her to the police station to give a statement. Defendant was subsequently detained by police. The State presented testimony from Clara's special education teacher, school resource officer, and social workers regarding Clara's mental disability, to wit, that Clara was "classified as intellectually disabled in the mild category[,]" had an IQ lower than 70, and was enrolled in classes for children with learning disabilities.

Defendant testified that, when he returned home from a night of drinking, he believed Clara was interested in a sexual encounter. Defendant admitted that Clara performed oral sex on him, but claimed that this contact was consensual. Defendant stated that Clara had called boyfriends from his home. He said Clara's father had told Defendant he was proud of Clara being a "straight A student." Defendant denied knowing that Clara had any mental disability until the police informed him of this fact. Defendant also testified that while he was in school, he took "Slow Learning Disability" classes, had failed the second and eighth grades, and failed in his first attempt to obtain his GED.

On 8 October 2009, a jury found Defendant guilty of second-degree sexual offense and crime against nature. The trial court consolidated the convictions and sentenced Defendant to 73-97 months in prison. Defendant gave notice of appeal in open court.

## Discussion

On remand, we address Defendant's two remaining arguments on appeal: (1) that Defendant received ineffective assistance of counsel at trial; and (2) that the trial court erred by not granting Defendant's motion for a mistrial based on defense counsel's purported conflict of interest. As discussed below, we vacate Defendant's conviction for crime against nature as a violation of constitutional prohibitions on double jeopardy. We find no error concerning Defendant's conviction for second-degree sexual offense.

### Ineffective Assistance of Counsel Claims

*A. "Opening the Door" to Evidence of Defendant's Other Sexual Offense Charges*[2]

**[1]** Defendant argues that his trial counsel provided ineffective assistance when he asked Defendant on direct examination if he had "ever

2. The phrase "opening the door" refers to the principle that "[w]here one party introduces evidence as to a particular fact or transaction, the other party is entitled to

done such a thing before," despite knowing of other sexual offense charges pending against Defendant. We disagree.

A criminal defendant has a constitutional right to the effective assistance of counsel. *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985) (citation omitted).

> To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. First, he must show that counsel's performance fell below an objective standard of reasonableness. Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error. However, the fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings. This determination must be based on the totality of the evidence before the finder of fact.

*State v. Batchelor*, 202 N.C. App. 733, 739, 690 S.E.2d 53, 57 (2010) (citations, quotation marks, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698 (1984). Our appellate courts "engage[] in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct" when reviewing ineffective assistance of counsel claims. *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) (citation omitted).

Here, at the time of trial, Defendant faced sexual offense charges based on allegations by his daughter Madison that Defendant had sexually abused her when she was between the ages of eleven and fifteen. When trial counsel asked Defendant if he had "ever done such a thing before," Defendant replied, "No." As a result, the State was allowed to call Madison to testify about Defendant's alleged sexual abuse of her. Defendant contends that his trial counsel's performance fell below an objective standard of reasonableness because there was no strategic benefit in opening the door to Madison's testimony on this point. We agree. However, because we conclude that the evidence about the other pending sexual offense charges did not likely

---

introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981) (citations omitted).

affect the jury's verdicts, Defendant was not prejudiced by his trial counsel's error and, accordingly, has failed to successfully assert an ineffective assistance of counsel claim.

A defendant commits second-degree sexual offense when he engages in a sexual act with a victim who is mentally disabled and who the defendant knew or reasonably should have known was mentally disabled. N.C. Gen. Stat. § 14-27.5(a)(2) (2011). Defendant admitted to engaging in a sex act with Clara, and substantial evidence of Clara's mental disability was presented. Thus, the main factual question for the jury was whether Defendant knew or should have known about Clara's mental disability.

The evidence that came in when Defendant's trial counsel opened the door concerned Defendant's alleged sexual offenses against his own daughter while she was a minor and the resulting criminal charges Defendant faced at the time of trial. This evidence suggested that Defendant was inclined to (1) commit incestuous acts and (2) have sexual encounters with a girl he knew to be underage. Thus, this evidence was irrelevant to the main issue before the jury in deciding the second-degree sexual offense charge: Defendant's awareness of Clara's mental disability.

We recognize that evidence of Defendant's alleged sexual offenses against his daughter reflected poorly on Defendant's character, to say the least, and may have suggested to the jury that Defendant was a thoroughly unpleasant person who showed an appalling lack of judgment when it came to his roles as a father and an adult man. However, Defendant had already revealed this distasteful aspect of himself to the jury by admitting that he had a sexual encounter with his daughter's seventeen-year-old friend in the family kitchen during his daughter's sixteenth birthday sleepover while his daughter and other children were present in the next room. As such, we cannot conclude that the evidence in question likely altered the jury's verdict. Accordingly, we overrule Defendant's ineffective assistance of counsel challenge to his conviction for second-degree sexual offense.

*B. Double Jeopardy*

[2] Defendant also argues that he received ineffective assistance of counsel to the extent his trial counsel failed to argue double jeopardy regarding the second-degree sexual offense and crime against nature charges against him, and in the alternative, that if trial counsel did adequately raise the issue, the court erred in failing to arrest judgment upon one of his subsequent convictions. We agree.

Double jeopardy bars additional punishment where the offenses have the same elements or when one offense is a lesser included offense of the other. On the other hand, where each offense requires proof of an additional element not included in the other, the offenses are distinct and the defendant may be prosecuted and punished for each offense. If . . . a single act constitutes an offense against two statutes and each statute requires proof of an additional fact which the other does not, the offenses are not the same in law and in fact and a defendant may be convicted and punished for both.

*State v. McAllister*, 138 N.C. App. 252, 255-56, 530 S.E.2d 859, 862 (2000) (citations omitted).

As noted by our Supreme Court in the case at bar, following the United States Supreme Court decision in *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508 (2003), a defendant challenged the constitutionality of our State's crime against nature statute, N.C. Gen. Stat. § 14-177, asserting that there was no legitimate state interest in regulating many types of sexual acts traditionally charged under the statute. *See State v. Whiteley*, 172 N.C. App. 772, 616 S.E.2d 576 (2005). This Court held the crime against nature statute was constitutional, but also held that it can only "properly be used to prosecute conduct in which a minor is involved, conduct involving nonconsensual or coercive sexual acts, conduct occurring in a public place, or conduct involving prostitution or solicitation[.]" *Id.* at 779, 616 S.E.2d at 581. Thus, following *Lawrence* and *Whiteley*, a conviction under section 14-177 requires proof not only of commission of an unnatural sexual act (as pre-*Lawrence*), but also proof of one of the additional four circumstances listed in *Whiteley*.

As discussed *supra*, second-degree sexual offense, as charged in Defendant's indictment, required proof of (1) a sexual act with a victim who was (2) mentally disabled such that she could not consent to the sexual act, and (3) who Defendant knew or should have known could not consent. N.C. Gen. Stat. § 14-27.5(a); *see also State v. Washington*, 131 N.C. App. 156, 167, 506 S.E.2d 283, 290 (1998) (holding that a person who is mentally disabled is "statutorily deemed incapable of consenting" to sexual acts). Also, as discussed above, the crime against nature charge here required proof of (1) a sex act (2) that was nonconsensual based on the victim's mental disability. *Whiteley*, 172 N.C. App. at 779, 616 S.E.2d at 581; *Hunt*, _____ N.C. at _____, 722 S.E.2d at 490-91. The specific sex act committed by Defendant was fellatio, which is a "sexual act" for purposes of both

statutes. N.C. Gen. Stat. § 14-27.1(4) (2011); *see also State v. Jacobs*, 128 N.C. App. 559, 495 S.E.2d 757 (holding that fellatio is a sexual act for purposes of second-degree sexual offense), *cert. denied*, 348 N.C. 506, 510 S.E.2d 665 (1998); *State v. Poe*, 40 N.C. App. 385, 252 S.E.2d 843, *cert. denied and appeal dismissed*, 298 N.C. 303, 259 S.E.2d 304 (1979) (holding that fellatio is a crime against nature), *appeal dismissed*, 445 U.S. 947, 63 L. Ed. 2d 782 (1980).

Here, the trial court instructed the jury that to find Defendant guilty of second-degree sexual offense, it must find beyond a reasonable doubt that Defendant (1) committed the sex act of fellatio with Clara who was (2) mentally disabled such that she could not consent and that Defendant (3) knew or should reasonably have known of Clara's mental disability. As to the crime against nature charge, the trial court instructed the jury that to return a guilty verdict, it must find beyond a reasonable doubt that Defendant (1) committed the unnatural sex act of fellatio with Clara, (2) "an adult who was mentally disabled or incapacitated or physically helpless so as to be incapable of properly consenting." Thus, on the particular facts of Defendant's case, crime against nature was a lesser-included offense of second-degree sexual offense, and entry of judgment on both convictions subjected Defendant to unconstitutional double jeopardy. *See McAllister*, 138 N.C. App. at 255, 530 S.E.2d at 862.

We recognize that in discussing the sufficiency of the evidence to withstand Defendant's motions to dismiss the crime against nature charge, our Supreme Court also referred to the presence of other *Whiteley* circumstances in this case, specifically that Clara was coerced and was a minor.[3] *Hunt*, ____ N.C. at ____, 722 S.E.2d at 490-91 ("Here, the record contains sufficient evidence that [D]efendant engaged in nonconsensual or coercive sexual acts with a minor. As [D]efendant concededly knew, Clara was seventeen at the time of her encounter with him."). Either of these *Whiteley* circumstances

---

3. We note that Clara was seventeen years old at the time of the offense. Thus, based upon Clara's age alone (rather than on her mental disability), Defendant's sexual relations with her, while perhaps morally reprehensible, would not be criminal under our statutes regarding indecent liberties with a child, N.C. Gen. Stat. § 14-202.1 (2011), statutory rape, N.C. Gen. Stat. § 14-27.7A (2011), or any other criminal statute, as the "age of consent" in this State is sixteen (in the absence of force or other additional circumstances). *See also* N.C. Gen. Stat. § 14-27.2 (2011) (first-degree rape); N.C. Gen. Stat. § 14-27.2A (2011) (rape of a child); N.C. Gen. Stat. § 14-27.4 (2011) (first-degree sexual offense); N.C. Gen. Stat. § 14-27.4A (2011) (sexual offense with a child). However, in light of our Supreme Court's opinion in *Hunt*, it appears that sexual acts committed with a consenting sixteen- or seventeen-year-old could sustain a charge under the crime against nature statute.

would have been sufficient to support the crime against nature charge and would have required proof of an additional fact not part of the second-degree sexual offense charge, avoiding double jeopardy. However, as noted *supra*, as to the crime against nature charge, the trial court *only* instructed the jury on lack of consent based upon Clara's mental disability. Accordingly, we must vacate Defendant's conviction for crime against nature and remand to the trial court for resentencing.

### Motion for Mistrial

**[3]** Defendant also argues that the trial court erred in refusing to grant his motion for a mistrial. We disagree.

"Whether to grant a motion for mistrial is within the sound discretion of the trial court and its ruling will not be disturbed on appeal unless it is so clearly erroneous as to amount to a manifest abuse of discretion." *State v. McCarver*, 341 N.C. 364, 383, 462 S.E.2d 25, 36 (1995), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). A trial court abuses its discretion only where "its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citation omitted). A mistrial should be declared only "when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *State v. Norwood*, 344 N.C. 511, 537, 476 S.E.2d 349, 361 (1996) (citation and quotation marks omitted), *cert. denied*, 520 U.S. 1158, 137 L. Ed. 2d 500 (1997).

Here, near the end of the State's case-in-chief, the prosecutor raised a concern about possible perjury by the Defendant's teenage son. Out of the presence of the jury, the trial court called to the stand a therapeutic counselor who had custody of Defendant's son at the time of trial. The counselor testified on *voir dire* that, following a phone conversation with defense counsel the night before, the son had asked what would happen to someone who lied in court. The counselor also testified that he had not actually heard defense counsel telling the son what to say in court. Defendant did not move for a mistrial. At the close of the State's evidence, Defendant moved to dismiss on various grounds, all of which were denied by the trial court. The trial court also addressed the counselor's *voir dire* testimony, remarking that while an attorney cannot offer evidence he knows to be false, a good trial lawyer would certainly prepare a witness and go over the witness' testimony. Neither side raised any objection to the trial court's remarks, and subsequently, defense counsel indicated that he would not call the son as doing so would not "help either side."

Later, midway through Defendant's case, defense counsel did move for a mistrial, stating that he might now want to call the son, but feared that he (defense counsel) would be called as a witness if the son testified. Following a discussion with defense counsel, the trial court denied the motion, stating that until the son was called and testified, there were no grounds for a mistrial. The trial court also assured defense counsel that if the son were called and anything occurred requiring a mistrial, it would reconsider the motion. However, the defense never called the son to testify.

The dissent suggests that the trial court was required to conduct an evidentiary hearing into the matter. However, our Supreme Court has specifically rejected the argument that a trial court is required to hold an evidentiary hearing into a possible conflict of interest, stating that "trial courts can determine in their discretion whether such a full-blown proceeding [an evidentiary hearing] is necessary or whether some other form of inquiry is adequate and sufficient." *State v. Choudhry*, 365 N.C. 215, 223, 717 S.E.2d 348, 354 (2011).

Here, regarding the possible conflict of interest, the trial court held a *voir dire* of the therapeutic counselor, discussed the latitude and limits of an attorney's responsibility to prepare witnesses for trial, discussed the possible grounds for a mistrial with defense counsel extensively, and assured defense counsel that a mistrial would be declared if grounds arose as the trial proceeded. These actions reflect the trial court's consideration of defense counsel's potential conflict of interest to the extent it believed was "adequate and sufficient." *Id.* In light of this consideration, we cannot characterize the court's subsequent denial of Defendant's motion for a mistrial as "so arbitrary that it could not have been the result of a reasoned decision." *Hayes*, 314 N.C. at 471, 334 S.E.2d at 747. As such, we see no abuse of discretion in the trial court's handling of this situation. Accordingly, we overrule this argument.

*Conclusion*

In sum, we conclude that Defendant received effective assistance of counsel and a trial free from prejudicial error as to the second-degree sexual offense charge, but vacate his conviction for crime against nature and remand to the trial court for resentencing.

NO ERROR IN PART; VACATED AND REMANDED IN PART.

Chief Judge MARTIN concurs.

Judge STROUD concurs in part and dissents in part.

STROUD, Judge concurring in part and dissenting in part.

Because I believe that the trial court erred by failing to conduct an evidentiary hearing to determine whether defense counsel's conflict of interest would require that the court order a mistrial, I dissent from the majority's opinion. I agree with the majority's determination that defense counsel's actions in "opening the door" to evidence regarding defendant's sexual abuse of his daughter fell below a reasonable standard but, because defendant was not prejudiced by his trial counsel's error, this did not amount to ineffective assistance of counsel. I also agree with the majority's determination regarding defendant's remaining arguments as to ineffective assistance of counsel and that the charge of crime against nature amounted to a violation of defendant's double jeopardy rights. I will only review the facts as necessary to address the issue upon which I dissent.

The majority concludes that the trial court did not abuse its discretion in denying defendant's motion for a mistrial because "the defense never called the son to testify[.]" I disagree, as this analysis fails to address the heart of the motion for mistrial which was defense counsel's conflict of interest. Defendant argues that his motion for a mistrial should have been granted because his trial counsel "had a direct conflict of interest between defending himself from accusations of possibly suborning perjury and coaching a minor witness," and having the witness testify on defendant's behalf or even presenting an offer of proof for preservation of the record. Defendant argues that accusations by the prosecutor and the subsequent warnings from the trial court to his trial counsel "unconstitutionally chilled defense counsel's representation of [defendant]" by preventing him from presenting his defense, as defendant's son was not called by defense counsel even though he "claimed to have information sufficient to make a difference in the trial[.]" Defendant concludes that by giving warnings to his defense counsel regarding perjury, misrepresentation to the court, and coaching a witness and then denying defense counsel's motions for mistrial based on a conflict of interest, the trial court "improperly projected himself into this case in a manner calculated to alter counsel's trial strategy" and therefore, he should have a new trial. The State counters that "[t]he facts in this case show that nothing occurred that effected defendant's ability to receive a fair trial" and the trial court did not abuse its discretion in denying defense counsel's motions for mistrial. The State further argues that the trial

court's actions in handling the accusations that defense counsel had coached the witness were "fair, just and impartial[,]" the trial court's remarks to defense counsel did not deprive defendant of due process, and defendant's argument should be overruled because it lacks merit.

N.C. Gen. Stat. § 15A-1061 (2007) states that

> [u]pon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case. . . .

"[A] motion for mistrial must be granted if there occurs an incident of such a nature that it would render a fair and impartial trial impossible under the law." *State v. McCraw*, 300 N.C. 610, 620, 268 S.E.2d 173, 179 (1980) (citation omitted). The decision as to whether substantial and irreparable prejudice has occurred lies within the court's discretion and, absent a showing of abuse of that discretion, the decision of the trial court will not be disturbed on appeal. *State v. Mills*, 39 N.C. App. 47, 50, 249 S.E.2d 446, 448 (1978) (citation omitted), *disc. review denied*, 296 N.C. 588, 254 S.E.2d 33 (1979). As an actual conflict of interest could "render a fair and impartial trial impossible under the law[,]" *see McCraw*, 300 N.C. at 620, 268 S.E.2d at 179, a motion for a mistrial can be based on a conflict of interest. *See State v. Bruton*, 344 N.C. 381, 391, 474 S.E.2d 336, 343 (1996); *State v. Whiteside*, 325 N.C. 389, 407, 383 S.E.2d 911, 921 (1989).

This Court has stated that

> [a] criminal defendant subject to imprisonment has a Sixth Amendment right to counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 37, 32 L. Ed. 2d 530, 538 (1972). The Sixth Amendment right to counsel applies to the states through the Fourteenth Amendment of the United States Constitution. *State v. James*, 111 N.C. App. 785, 789, 433 S.E.2d 755, 757 (1993). Sections 19 and 23 of the North Carolina Constitution also provide criminal defendants in North Carolina with a right to counsel. *Id.* The right to counsel includes a right to "representation that is free from conflicts of interests." *Wood v. Georgia*, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 230 (1981).

*State v. Mims*, 180 N.C. App. 403, 409, 637 S.E.2d 244, 247-48 (2006). In order to establish a violation of this right, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64 L.Ed. 2d 333, 346-47 (1980). Additionally,

> prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts . . . [p]rejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'

*Strickland v. Washington*, 466 U.S. 668, 692, 80 L.Ed. 2d 674, 696 (1984) (quoting *Cuyler*, 446 U.S. at 345-50, 348, 64 L.Ed.2d at 347, 346). "If the possibility of conflict is raised before the conclusion of trial" or "[w]hen the court becomes aware of a potential conflict of interest with regard to a defendant's retained counsel[,]" the trial court must "take control of the situation" by conducting a hearing

> "to determine whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment." . . . In addition, the trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given the opportunity to express his or her views.

*James*, 111 N.C. App. at 791, 433 S.E.2d at 758-59 (quoting United *States v. Alberti*, 470 F.2d 878, 881-82 (2d Cir. 1972), *cert. denied*, 411 U.S. 919, 36 L.Ed. 2d 311 (1973) and *cert. denied, Depompeis v. U.S.*, 411 U.S. 965, 36 L.Ed. 2d 685 (1973) and *United States v. Cataldo*, 625 F. Supp. 1255, 1257 (S.D.N.Y. 1985)). Our Supreme Court has further stated that

> [w]hile the court is not required to act if it is aware only "of a vague, unspecified possibility of conflict," *Mickens v. Taylor*, 535 U.S. 162, 169, 152 L. Ed. 2d 291, 302 (2002), when the court "knows or reasonably should know" of "a particular conflict,"

that court must inquire "into the [that conflict of interest]," *Sullivan*, 446 U.S. at 346-47, 64 L. Ed. 2d at 345-46.

*State v. Khuram Ashfaq Choudhry*, 365 N.C. 215, 220, 717 S.E.2d 348, 352 (2011). When this Court cannot determine from the record on appeal whether defendant's counsel had a conflict of interest, this Court may remand the matter to the trial court for an evidentiary hearing to address the issue. *Mims*, 180 N.C. App. at 411, 637 S.E.2d at 249. *See James*, 111 N.C. App. at 791, 433 S.E.2d at 759 (noting that "[o]rdinarily, we would remand the case to the trial court for a hearing to determine if the actual conflict adversely affected the lawyer's performance."). The *James* Court further stated that "the Sixth Amendment right to conflict-free representation can be waived by a defendant, if done knowingly, intelligently and voluntarily." *Id.* (citations omitted).

Even though the majority gives a brief summary of the proceedings, I believe a more thorough look at the trial is needed to address defendant's argument. From the trial transcript, it appears that the possible conflict of interest first arose during the presentation of the State's evidence. The prosecutor called Wayne Rivers as a witness, asked the trial court for a *voir dire* outside the present of the jury, and made the following statement:

> [The State]: Your Honor, I think I have a obligation [sic] as Assistant D.A. to prevent any crimes occurring. I have been informed this morning that one of [defense counsel's] witnesses asked yesterday could he—words to the effect, could he get in trouble for not telling the truth or committing perjury. That witness has also conveyed to me this morning that that witness, once he got off the phone with [defense counsel], said something to the effect that, I'm going to say something to get my daddy out of jail. And so I want to put that on the record outside the hearing of the jury. Put Your Honor and [defense counsel] on notice what I know in an attempt to not muddy the case for the Court of Appeals and get what Mr. Rivers said on the record.

Defendant's son Chris[1] was brought into the court room. Wayne Rivers, the therapeutic foster parent for Chris, testified that Chris was living with him. He further testified that Chris received a phone call the night before from defendant's trial counsel. Mr. Rivers was in the same room with Chris but did not hear all of the conversation.

---

1. A pseudonym.

When Chris got off the phone "he said something like, if I tell this, my dad can walk tomorrow" but did not explain what he meant by "this[.]" Mr. Rivers explained that "you know, it might have been the truth. It may not have been." Later that night, Chris asked Mr. Rivers "what happens if somebody lies in court? And [Mr. Rivers] explained to him, you get charged with perjury[.]" After a long conversation with Chris, Mr. Rivers was concerned that Chris had been "coached" by defense counsel as to what he should say in court. He felt like the conversation should not have occurred without a guardian present. The trial court told the prosecutor to proceed with his next witness and he would "think about how to deal with this issue[.]"

After the State rested its case and before defendant testified, the trial court, out of the presence of the jurors, stated that he did not know if Mr. Rivers or Chris would be called as a witness but if so, "the rules against perjury would apply to them, as well as anyone else." The trial court then directed toward defense counsel the following statements: "[T]he rules of professional conduct, as you know, prevent certain things from being said" and read to him portions of North Carolina Rule of Professional Conduct 3.3 regarding making false statements of material fact and offering evidence that a lawyer knows to be false. Also, citing *State v. McCormick*, 298 N.C. 788, 791-92, 259 S.E.2d 880, 882-83 (1979), the trial court stated that it was not improper for defense counsel to prepare his witness for trial and to explain the applicable law as "[s]uch preparation is the mark of a good trial lawyer and is to be commended because it promotes more efficient administration of justice and saves the Court time." The trial court explained that nothing improper occurs unless "the attorney has placed in the witness's mouth or false or perjured testimony." After this statement, defense counsel informed the trial court that he had emailed the State Bar and had correspondence from them. The trial court stated that he would put the correspondence in the court file[2] and that they should proceed with the trial but told defense counsel, "who you decide to call as a witness is up to you." Defense counsel then informed the trial court that he was not calling Chris as a witness. During defendant's testimony, defendant made an apparent attempt to bring in Chris' testimony:

[Defense counsel:] Okay. All right. So how come you didn't see [Clara] more often?

---

2. There is no correspondence from the State Bar in the record on appeal.

[Defendant:] Because I was never really home. I hate to admit it, but even, you know, if my son testified, he would tell you that I—

Q. Well, let's not talk about what your son would say.

A. I wasn't there much at my home. I kind of stayed away after —I tried to stay busy after certain things happened.

Prior to the State's cross-examination of defendant, defense counsel moved for a mistrial:

I think that the—this issue about regarding what I knew was coming would definitely preclude me from calling him as a witness. So it would make me a witness basically as to what I said to a witness out of court in front of his guardian. And so I'd have to move for a mistrial. Basically, I think there has been a—I'd have to move for a mistrial.

After the trial court stated that he did not completely understand his reasoning for the motion, defense counsel explained that he had contacted Chris in order to get a suit for defendant but after talking with Chris, he "[d]ecided [Chris] might be able to help his father[,]" and tried to subpoena Chris. He further explained that, at some point, he talked again with Chris, when Mr. Rivers was listening to their conversation, and Mr. Rivers thought that he was asking Chris to say something that was untrue and reported this to the prosecutor. He explained that this would preclude him from calling Chris as a witness because any line of questioning regarding what was said would make him a witness in this case. The trial court stated that the only testimony relevant to the trial was what defendant's son was going to testify in the trial regarding defendant, not the conversation between defense counsel and Chris, as "any conversation you [had] with him and anything subsequent might be an issue for something else, but not for this trial." Defense counsel responded that he knew defendant's son's testimony would not be perjured but the allegations against him "put[] a freeze on my ability to call [Chris] as a witness[.]" The trial court then denied defense counsel's motion for a mistrial, stating that there was no reason for a mistrial since defense counsel had decided not to call Chris as a witness. The prosecutor argued that Chris was not a witness to anything that occurred and it would not help defendant's case at all for him to be called as a witness. The trial court reiterated that he was not granting defense counsel's motion for a mistrial. After the verdict, defense counsel renewed his motion for a mistrial pursuant to N.C. Gen. Stat. § 15A-1061.

The above summary shows that there was an apparent conflict of interest between defense counsel and defendant regarding the decision to call Chris as a witness. From defense counsel's perspective, putting Chris on the stand and giving him an opportunity to testify that he had been coached by defense counsel to commit perjury could have resulted in defense counsel being subjected to discipline for violation of the North Carolina Revised Rules of Professional Conduct. Rule 3.3(a) states, in pertinent part, that

[a] lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

. . . .

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including if necessary, disclosure to the tribunal. . . . [3]

Rule 1.16 states also that "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if (1) the representation will result in violation of law or the Rules of Professional Conduct[.]" In the case cited by the trial court, *State v. McCormick*, the Court addressed the point at which preparation of a trial witness can be considered "coaching" a witness:

It is not improper for an attorney to prepare his witness for trial, to explain the applicable law in any given situation and to go over before trial the attorney's questions and the witness' answers so that the witness will be ready for his appearance in court, will be more at ease because he knows what to expect, and will give his testimony in the most effective manner that he can. Such preparation is the mark of a good trial lawyer, *see, e.g., A. Morrill, Trial Diplomacy*, Ch. 3, Part 8 (1973), and is to be commended because it promotes a more efficient administration of justice and saves court time.

3. The last part of Rule 3.3(a)(3) states that, "A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false." This portion is inapplicable because, as noted above, defense counsel told the trial court that Chris' testimony would not be perjured, showing that this was not the reason he declined to call Chris as a witness.

Even though a witness has been prepared in this manner, *his* testimony at trial is still his voluntary testimony. Nothing improper has occurred so long as the attorney is preparing the witness to give *the witness'* testimony at trial and not the testimony that the attorney has placed in the witness' mouth and not false or perjured testimony.

When a witness' testimony appears to have been memorized or rehearsed or it appears that the witness has testified using the attorney's words rather than his own or has been improperly coached, then these are matters to be explored on cross-examination, and the weight to be given the witness' testimony is for the jury. The sanctions of the Code of Professional Responsibility are there for the attorney who goes beyond preparing a witness to testify to that about which the witness has knowledge and instead procures false or perjured testimony. DR7-102, Code of Professional Responsibility. .

298 N.C. 788, 791-92, 259 S.E.2d 880, 882-83 (1979) (emphasis in original).

From the defendant's perspective, the record indicates that Chris' testimony could have benefited defendant's defense. Mr. Rivers testified that Chris told him that he could testify and his "dad could walk[.]" Also, defendant's reference to Chris in his testimony at least shows that there was a possibility that Chris could have confirmed defendant's claim that he did not know that Clara was mentally disabled because he was never around her, casting doubt on the highly contested and essential element of the charged offense, first degree sexual offense. *See* N.C. Gen. Stat. § 14-27.5(a)(2). Also, defense counsel stated that when he talked with Chris he "[d]ecided [Chris] might be able to help his father[,]" and tried to subpoena Chris. In *State v. Mackey*, this Court highlighted a defendant's right to offer the testimony of witnesses in support of his defense:

"[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

**STATE v. HUNT**

[221 N.C. App. 489 (2012)]

58 N.C. App. 385, 388, 293 S.E.2d 617, 619 (quoting *Washington v. Texas*, 388 U.S. 14, 19, 18 L.Ed. 2d 1019, 1023 (1967)), *appeal dismissed and disc. review denied*, 306 N.C. 748, 295 S.E.2d 761 (1982). In summary, defense counsel had an apparent conflict of interest with his client, defendant, and defense counsel clearly recognized this conflict and stated it to the trial court.[4] If defense counsel put Chris on the stand, even to make an offer of proof, there was a possibility that he could testify that he had been coached to commit perjury. However, Chris also could have testified that defendant was not around that much, confirming defendant's claims that he did not know that Clara was mentally disabled. It is also possible that Chris' truthful testimony would not have been helpful to defendant's case at all, in which case defense counsel's decision not to call him to testify was reasonable and did not prejudice defendant. Contrary to the majority's reasoning, the fact that Chris was not called as a witness did not resolve this conflict, as defense counsel may have chosen not to call Chris to testify to protect his own interests. In fact, that was essentially the choice which the trial court gave him, but this is not a choice which defense counsel should have been required to make.

Following the prosecutor's accusation, Mr. Rivers' testimony, and the trial court's warnings to defense counsel regarding perjury, the trial court never addressed the extent of this conflict of interest but left defense counsel to resolve it himself, which he did by declining to call Chris to testify. Even though the trial court made no ruling following the prosecutor's allegations of subornation of perjury, defense counsel did highlight this conflict of interest in his motion for a mistrial. In his motion, defendant stated that he could not call Chris as a witness because he had been implicated by the prosecutor and Mr. Rivers as coaching Chris to commit perjury. Defense counsel also stated that the allegations against him "put[] a freeze on my ability to call [Chris] as a witness[.]" Further, the trial court noted that "any conversation [defense counsel had] with [Chris] and anything subsequent might be an issue for something else, but not for this trial." The "something else" appears to be a reference to the possibility of an accusation that defense counsel violated the Rules of Profession Conduct and potentially subsequent proceedings by the State Bar.

---

4. I further note that due to this possible conflict of interest, continued representation of defendant could have resulted in violation of other rules: Rule 1.7(a)(2) of the North Carolina Revised Rules of Professional Conduct states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: . . . . (2) the representation of one or more clients may be materially limited . . . by a personal interest of the lawyer."

The apparent conflict of interest at issue in this case was not "vague" or "unspecified" and the trial court should have known or reasonably should have known to address this issue, *see Khuram Ashfaq Choudhry*, 365 N.C. at 220, 717 S.E.2d at 352, because it was raised twice during the trial, first by the prosecutor in informing the trial court and second by defense counsel in his motion for a mistrial. At no time did the trial counsel "take control of the situation" by conducting a hearing "to determine whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment[,]" or to "fully advise[] [defendant] of the facts underlying the potential conflict and . . . [giving him] the opportunity to express his . . . views." *See James*, 111 N.C. App. at 791, 433 S.E.2d at 758-59. There is no record that defendant "knowingly, intelligently and voluntarily" waived this possible conflict. *See id.* at 791, 433 S.E.2d at 759. The trial court's error is clearly illustrated by the fact that the record fails to show whether defense counsel did in fact coach Chris to commit perjury or whether Chris would have testified truthfully that defendant was not around that much because the trial court never brought Chris to the stand to find out what Chris would say.[5] Of course, as I have no way of knowing what Chris' testimony would be, I cannot say that the failure to grant defendant's motion for mistrial was reversible error. The trial court should have conducted an evidentiary hearing to determine the nature and extent of the conflict of interest and whether defendant would be prejudiced by the conflict of interest. Depending on the substance of Chris' testimony, the fact that he was not called to testify may have made no difference to defendant's defense or it may have been helpful to defendant. I would therefore remand for an evidentiary hearing to determine the nature and extent of the conflict of interest and whether the failure to call Chris to testify may have prejudiced defendant. *See Mims*, 180 N.C. App. at 411, 637 S.E.2d at 249. If the trial court were to determine that defendant's defense was impaired by the conflict of interest, I believe that the trial court should then order a new trial.

For the above reasons, I respectfully concur in part and dissent in part, and would remand for a hearing regarding defense counsel's conflict of interest.

---

5. The record indicates that Chris was at the trial.